IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

CASE NO. 15-15430-B

UNITED STATES OF AMERICA,
                    Plaintiff - Appellee

versus

ROGER LARDRELL McCULLOUGH
                    Defendant - Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
CASE NO.3:15CR115-JFD

APPELLANT'S APPEAL BRIEF

PAUL R. COOPER
COOPER & COOPER
Attorney for Appellant
312 Scott Street
Montgomery, Alabama 36104
(334) 262-4887
(334) 262-4880-fax
prc@cooperandcooperlaw.com

CASE NO. 15-15430-B      U.S. v. Roger Lardrell McCullough

**<u>CERTIFICATE OF INTERESTED PERSONS<br>AND CORPORATE DISCLOSURE STATEMENT</u>**

The following persons have an interest in the outcome of this case:

Coody, Charles S., United States Magistrate Judge

Cooper, Paul R., Attorney for the Appellant McCullough

Dubina, Joel F., United States Court of Appeal, Eleventh
    Circuit Judge

Geer, John J. III, Assistant United States Attorney

Kennemer, Darren T., United States Probation Officer

McCullough, Roger Lardrell, Defendant-Appellant

Thompson, Myron H., United States District Court Judge

## STATEMENT REGARDING ORAL ARGUMENT

McCullough requests oral argument.  The motion to suppress involves application of Alabama State law involving visibility of car tags. Further, the court may have questions about the sentencing hearing  that can be better addressed in person.

## TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS

CORPORATE DISCLOSURE STATEMENT ........................C-1

STATEMENT REGARDING ORAL ARGUMENT ......................i

TABLE OF CONTENTS .......................................i

TABLE OF CITATIONS .....................................ii

STATEMENT OF JURISDICTION ..............................1

STATEMENT OF THE ISSUES ................................1

     STATEMENT OF THE CASE ............................2

     I.   COURSE OF THE PROCEEDINGS AND DISPOSITIONS

          BELOW .......................................2

     II.    STATEMENT OF THE FACTS ...................4

     III.    STANDARD OF REVIEW........................8

SUMMARY OF THE ARGUMENT................................9

ARGUMENT..............................................11

     ISSUE No. 1......................................11

ISSUE NO. 2........................................20

ISSUE NO. 3........................................27

CONCLUSION............................................39

CERTIFICATE OF COMPLIANCE ...........................39

CERTIFICATE OF SERVICE ..............................39

**TABLE OF CITATIONS**

**SUPREME COURT CASES**

Gall v. U.S., 552 U.S. 38, 128 S.Ct. 586, 591, 169 L.Ed.2d
445 (2007).......................................8

Heien v. North Carolina, 574 U.S. -, 135 S. Ct. 530 (2014)
.........................................10,13,14

Mapp v. Ohio, 367 U.S. 643 (1961)......................20

Ornelas v. U.S., 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d
911 (1996).......................................19

Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 168
L.Ed.2d 203 (2007)............................27,35

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 1883, 20 L.Ed.2d
889 (1968).......................................

U.S. v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d
497 (2001).......................................19

U.S. v. Pepper, 562 U.S.476, 131 S.Ct.1229, 179 L.Ed. 204
(2011) ...............................11,26,28-34,36

Weeks v. U.S., 232 U.S. 383 (1914).....................20

**FEDERAL CASES**

U.S. v. Dowd, 451 F.2d 1244(11th Cir. 2006)..............26

U.S.v. Gordon, 231 F.3d 750, (11th Cir. 2000)...........8

U.S. v. Hill, 643 F.3d 807(11th Cir. 2011).............37

U.S. v. House, 684 F.3d 1173(11th Cir. 2012)...........12

U.S v. Irey, 612 F.3d 1160 (11th Cir.2010)...........8,36

U.S.v. Kulman, 711 F.3d 1321 (11th Cir. 2013)........27,36

U.S. v. Lindsey, 482 F.3d 1285 (11th Cir. 2007)........12

U.S. v. Magluta, 44 F.3d 1530 (11th Cir. 1995)..........8

U.S. v. McGuiness, 769 F.2d 695, 695-96  (11th Cir. 1985)

........................................9,10,23

U.S. v. Powell, 222 F.3d 913, 917 (11th Cir.2000).......11

U.S. v. Winkle, 477 F.3d 407 (6th Cir. 2007).........23,26

U.S. v. DeJesus, Case No. 2:09-CR-22-WKW, Doc. 70 (U.S.

Dist. Ct., Mid. Ala. 2009)........................18

**UNITED STATES CONSTITUTION**

Fourth Amendment...................................12,19

**UNITED STATES SENTENCING GUIDELINES**

USSG §4B1.1 (Career Offender) .......................36,37

**FEDERAL STATUTES**

18 U.S.C. §841(a)(1) ................................2,3

18 U.S.C. §924(c)(1)(A)( i)............................2

18 U.S.C. §922(g)(1)....................................3

18 U.S.C. §1291.........................................1

18 U.S.C. §3231.........................................1

18 U.S.C. §3232.........................................1

18 U.S.C. §3553(a)...........................10,29-30,32

18 U.S.C. §3742(a)......................................1

**FEDERAL RULES OF CRIMINAL PROCEDURE**

Rule 18................................................1

Rule 25(b)(1)....................................4,2-22

**STATE STATUTES**

1975 Ala.Code §13A-12-213(1)...........................37

1975 Ala.Code §32-6-51 ...................7,9,12,14-16,18

1975 Ala.Code §40-12-242...........................9,12-13

**STATE CASES**

Whistenant v. State, 278 So.2d 183

    (Ala.Crim.App. 1973)......................9,13-14,17

**STATE ADMINISTRATIVE CODE**

Alabama Administrative Code 810-5-1-.217:

Ala. Depart. of Revenue,"License Plate Design

Specification",effective October 12, 2012 .............16

**MISCELLANEOUS**

Motor Vehicle Division of the Ala. Depart. of Revenue, "NEW

GUIDELINES FOR DESIGNING ALABAMA LICENSE TAGS SEPTEMBER

2013" ........................................15-16

## STATEMENT OF SUBJECT MATTER JURISDICTION AND APPELLATE

## JURISDICTION

United States District Courts have jurisdiction to hear criminal crimes committed against the laws of the United States. 18 U.S.C. §3231. The United States District Court for the Middle District of Alabama has venue to hear a federal drug cases case committed within its district. 18 U.S.C. §3232; Rule 18, Federal Rules of Criminal Procedure.  The events described in the indictment occurred in Lee County, Alabama which is located within the Middle District of  Alabama.

The United states Court of Appeals for the Eleventh Circuit has jurisdiction to review  appeals from a final decision of district courts. 18 U.S.C. §1291. It has jurisdiction  to review a criminal sentence ordered in district courts. 18 U.S.C. §3742(a).

## STATEMENT OF THE ISSUES

ISSUE No. 1-The traffic stop was illegal because the

license tag was plainly visible, readily identifiable, and plainly legal.

ISSUE NO. 2-The Sentencing Judge committed an abuse of discretion when he did not re-assign the case back to the original judge, or when it was first assigned.

ISSUE NO. 3-The sentence was procedurally and substantively unreasonable because the Judge did not consider McCullough's "postsentencing rehabilitation" arguments.

**STATEMENT OF THE CASE**

**Course of proceeding and dispositions in the court below:**

This case begins with a prior case. on April 28, 2008 U.S. District Judge Myron Thompson sentenced McCullough in U.S. v. McCullough, Case No. 3:07cr146 for distribution of controlled substances under 18 U.S.C.§841(a)(1) and a felon in possession of a firearm under 18 U.S.C.§922(g)(1). (3:07cr146 Doc. 50) While on supervised release in July 18, 2014 he was arrested for various state law violations involving the same facts of the present case, and subsequently charged with violation of the terms of his supervised release. (Id, Doc.52) On November 17, 2014 Judge Thompson convicted McCullough and sentenced him

to 4 months time served, then 32 months of supervised release with 20 months residence at the Fellowship House in Birmingham, Alabama. (Id. Doc.86)

The case at hand now begins. Under the same facts in the revocation case, on March 18, 2015 McCullough was indicted in Count 1 for possession with intent to distribute marijuana under 18 U.S.C. §841 (a)(1), in Count 2 for the use of a firearm in furtherance of marijuana trafficking under 18 U.S.C.§ 924(c)(1)(A)(i), and in Count 3 for felon in possession of a firearm under 18 U.S.C. §922(g)(1). (Doc.1) He was arrested on April 5, 2015. And he pled not guilty plea .(Doc.7) He was released on bond on the same terms of his supervised release on April 7, 2015. (Doc.9)

He filed a motion to suppress. (Doc.13) The Government filed their response. (Doc. 15), and a response to court order (Docs. 15 & 17), to which  McCullough then filed a response with exhibits. (Doc. 20) U.S. Judge Magistrate Charles Coody  recommended denial. (Doc.22) The objections to the report and recommendation were filed. (Doc.23). Judge Thompson upheld the recommendation (Doc.28).

On August 18, 2015 McCullough filed a notice of

-3-

conditional plea of guilty. (Doc. 31) On August 21, 2015 before Magistrate Judge Coody, McCullough entered a conditional guilty plea reserving his right to appeal to all counts without an agreement. (Doc. 34)

On August 18, 2015 the docket report stated that the case was reassigned to Judge Joel Dubina, and Judge Thompson was no longer assigned the case. On October 28, 2015 McCullough filed his motion re-assign the case back to the original judge under Rule 25 (b)(1), Federal Rules of Criminal Procedure. (Doc.23).

On November 16, 2015 McCullough filed his motion for a variance from the guidelines(Doc.39), and brief and response. (Doc.40).

On November 23, 2015 during the sentencing hearing, Judge Dubina denied the motion to re-assign the case back to Judge Thompson (Doc.59-9), and the motion for downward variance from the guidelines (Doc.59-26-27). Then, he sentenced McCullough as a Career Offender under USSG §4B1.1(c)(3) consecutively to 60 months on the marijuana distribution, 114 months on the use of a firearm in a drug trafficking crime, and 120 months on the felon in possession of a firearm, 294 months in all. (Doc.48) McCullough filed his notice of appeal on December 3, 2015

-4-

(Doc. 47). The record was deemed complete on December 22, 2015. (Doc.59) McCullough self-surrendered on January 5, 2016 to begin his sentence. Hence lies this appeal.

**Statement of the facts:**

**The traffic violation**

On July 18, 2014 at 1:22 am cst, Criminal Interdiction Investigator Stanley Wilson of the Lee County Sheriff's Department, was parked parallel on Interstate 85 at mile marker 68 and wasn't expecting McCullough to be riding down the interstate. (Doc.25-4,33, 37) He observed McCullough's red truck and scanned the license plate. When the scanner read the license plate, it appeared on his scanner screen. Wilson noticed on the screen that "it had an obstruction on the license plate that you could not clearly–– the license plate was not plainly visible." (Id,4-6, 30) It is inferred that later when the truck was stopped, Wilson determined that an aftermarket bracket that was a reflective eagle emblem obstructed the word "Alabama" at the top of the plate. (See photo Doc.15-2, Ex.2, Govt.Mot.Suppress) Wilson's car was equipped with license plate reader system made by Vigilant Solutions. When logged into the system, it collects alphanumeric combinations by taking pictures of

-5-

the alphanumeric numbers with a camera mounted on his truck. (Id, 33, 37) It's set up to capture the alphanumeric combinations. (Id, 40) The scanned picture of the alphanumerics appeared in Wilson's truck on a screen. (Id, 35) Earlier, McCullough's vehicle was scanned in Troupe County, Georgia at 1:58 a.m. est (Id, 33; Def.Ex.2, Id,35). Wilson made his scan of the alphanumerics at 1:22 a.m. cst.  He understood it was a valid Alabama license tag before he began to follow McCullough. He called in the tag number to headquarters. (Ex.3, Id, 36-38) The alphanumeric numerals were plainly visible to Wilson, and nothing was obstructing them. (Def.Ex.3,Id, 40;36-40. When Wilson called in, he was told the year of validation and the month of registration, and knew it was a valid Alabama tag. He could see that the color of the tag was the same color as typical Alabama tag. (Id, 40-41).

From looking at the scan of the alphanumerics, Wilson believed the license plate was obstructed and a traffic violation. (Id, 12). (Govt. Ex.2, Id, 21). So Wilson turned on his lights and siren at mile marker 66, and began to follow McCullough immediately to pull him over, but the red Ford pick-up truck didn't stop.  It slowed

down to 50-55 mph. At mile marker 64, Wilson, incredibly, smelled raw marijuana coming from the truck going 55 mph with both  McCullough's and Wilson's  windows rolled up and air conditioners going, from marijuana located in a gallon sized, zipped up baggie, located inside  another zipped up bag in the rear floorboard of McCullough's truck. He followed the truck with its flashers on for four miles until it pulled off at the mile marked 62 exit and immediately stopped in the parking lot of Travelodge hotel. (Id, 7-9, 38,48-50)

Wilson approached the truck, smelled marijuana from the truck, and made a probable cause search. He found marijuana residue in the center console, a black bag behind the console in the floor board with a gallon sized baggie containing marijuana and $8335. McCullough was then arrested for possession of marijuana. (Id, 10-11, 51)

Also, he gave McCullough traffic tickets for failure to yield right of way to an emergency vehicle, and for not having a plainly visible license tag under 1975 Ala. Code §32-6-51. (Id, 11, 30-31, Def.Ex.1)

Then Wilson searched McCullough and found $4,286, and a key to room 130 of the Clarion Hotel, in Auburn,

Alabama.  Later, Wilson got a search warrant for room 130 registered to McCullough. While executing the search warrant, they found about three pounds of marijuana, residue, two baggies with marijuana, a digital scale, and a North American Arms .22 cal. handgun. (Id, 17-19)

**State of the standard or scope of review for each contention:**

"We review the district court's denial of a motion to suppress evidence as a mixed question of law and fact. 'The district court's findings of fact are viewed under the clearly erroneous standard; its application of the law to those facts is subject to de novo review.'" United States v. Gordon, 231 F.3d 750, 753-54 (11th Cir. 2000) (citation omitted). All facts are construed in the light most favorable to the prevailing party. United States v. Magluta, 44 F.3d 1530, 1536 (11th Cir. 1995).

The reasonableness of a sentence is reviewed under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). It provides a range of choice for the district court, "so long as that choice does not constitute a clear error of judgment." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir.2010) (en banc).

-8-

The Eleventh Circuit reviews under Fed. Rules Crim. Proc., Rule 25(b)(1) whether the Judge to whom a case is transferred was familiar with the entire record before sentencing. He has broad discretion to determine whether he can sentence in a case he didn't try. <u>U.S. v. McGuiness</u>, 769 F.2d 695, 695-96  (11th Cir. 1985)

### SUMMARY OF ARGUMENT

Issue 1-Officer Wilson did not have probable cause or a reasonable suspicion to conduct the traffic stop of McCullough. <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct.1868, 20 L.E.2d 889 (1968) He initiated the traffic stop because of his erroneous belief that McCullough had violated 1975 Ala. Code §36-6-51: The Alabama license tag was not plainly visible.

Wilson scanned McCullough's license plate with reader plate technology. The image that on Wilson's computer screen appeared to have the word "Alabama" obscured. However, the alphanumerics were plain. Wilson knew that the Alabama tag was legal and current from the alphanumerics.

The alphanumerics must be "in a upright position and plainly visible" under 1975 Ala.Code §40-12-242.  The statute has been interpreted by an Alabama appellate court

in <u>Whisenant v. State</u>, 278 So.2d, 183, 93

(Ala.Crim.App.1973) to mean that Alabama tags must be

attached to the rear with the numbers in "in an upright

position and plainly visible." Therefore, Wilson's

incorrect knowledge of the Alabama law was not

"objectively reasonable" under <u>Heinen v North Carolina</u>,

574 U.S. __, 135 S.Ct.530 (2014) because this statute had

been construed by an Alabama appellate court.

Issue 2-The District Court committed error when it

re-assigned the case for sentencing to another judge.

Under Fed.Rule Crim. Proc., Rule 25(b)(1) allows

assignment if the original judge3 cannot perform his

duties because of "absence, death, sickness, or other

disability." Judge Thompson was in the courthouse on the

day of sentencing. Furthermore, Judge Dubina was not

familiar with the entire record, and unaware to the motion

to re-assign the case, at sentencing.  The failure to be

familiar with the entire record has been cause of vacation

of the sentence. <u>U.S. v. McGuiness</u>, 769 F.2d 695, 695-96

(11th Cir. 1985).

Issue 3-The sentence of 294 months under USSG 4B1.1,

Career Offender,  was procedurally and substantively

unreasonable. The Court did not consider or apply

McCullough's arguments to 18 U.S.C. §3553(a) factors. McCullough argued in his sentencing memorandum and at sentencing that his pre-indictment/post-conviction/postsentencing rehabilitation conduct at the Fellowship House while waiting this sentencing would be grounds for a variance under the §3553(a) facts as enunciated in U.S.v Pepper, 562 U.S. 476 (2011). Judge Dubina was unaware of this pivotal case which means he didn't consider McCullough's sentencing memorandum and exhibits.

## ARGUMENT AND CITATIONS OF AUTHORITY

**ISSUE 1-  The traffic stop was illegal because the license tag was plainly visible, readily identifiable, and plainly legal.**

Wilson did not have a reasonable suspicion for a traffic stop. McCullough did not violate Ala. Code 1975, §32-6-51 regarding his rear tag. "To have reasonable suspicion, an officer conducting a stop must have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. United States v. Powell, 222 F.3d 913, 917 (11th Cir.2000) The 'reasonable suspicion' must be more than 'an inchoate and unparticularized suspicion or

-11-

hunch.' Id. (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)). While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. <u>Illinois v. Wardlow</u>, 528 U.S. 119, 120 S.Ct. 673, 675-76, 145 L.Ed.2d 570 (2000)." <u>U.S. v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007) (Internal quotation marks omitted). "The Supreme Court has ruled that a traffic stop is reasonable under the Fourth Amendment when supported by probable cause or reasonable suspicion even if it is inconsistent with agency policy, <u>Whren v. United States</u>, 517 U.S. 806, 813-16, 116 S.Ct. 1769, 1774-76, 135 L.Ed.2d 89 (1996), or state law, <u>Virginia v. Moore</u>, 553 U.S. 164, 173-76, 128 S.Ct. 1598, 1605-07, 170 L.Ed.2d 559 (2008)." <u>United States v. House</u>, 684 F.3d 1173, 1184 (11th Cir. 2012)

The Investigator Wilson turned on his emergency lights and siren for a traffic stop for the violation of 1975 Ala. Code, §32-6-51. It states, in pertinent part:

> "Every motor vehicle operator who operates a
> motor vehicle upon any city street or other
> public highway of or in this state shall at all

times keep attached and **plainly visible** on the
rear end of such motor vehicle a license tag or
license plate as prescribed and furnished by the
Department of Revenue at the time the owner or
operator purchases his license." (Emphasis added)

It is the alphanumerics-ABC123-on a license tag that

must be "plainly visible".  1975 Ala. Code §40-12-242

states, in part:

"No private passenger automobile and no
motorcycle shall be used on any public highway in
the   state unless the proper license tag
therefor  has been procured and is securely
attached to the rear end thereof, such tag to  be
so attached right side up with the number thereof
in an upright position and **plainly visible. "**
(Emphasis added)

The tag must be right side up with the number upright, and

the number **"plainly visible".**

This statute has been construed one time by an

Alabama appellate court:

"Every private passenger automobile, when
operated upon the public highways of Alabama, must have a
proper license tag securely attached to the rear of the
vehicle right side up with the numbers thereof in an
upright position and **plainly visible.** Title 51, Section
693, Code of Alabama 1940, as last amended. "[now 1975
Ala. Code, §40-12-242](Emphasis added)

Whistenant v. State, 278 So.2d 183,93 (Ala.Crim.App.

1973). Contrary to the conclusion of the Magistrate Judge

(See Doc.22-8), Wilson's mistake  of the law is no excuse

under

In <u>Heien v. North Carolina</u>, 574 U.S. -, 135 S. Ct. 530 (2014), a traffic stop based upon a law officer's incorrect knowledge of a "Stop Lamp" law was held objectively reasonable partly because the law had never been construed in an appellate court. The Supreme Court stated:

> "This 'stop lamp' provision, moreover, had never been previously construed by North Carolina's appellate courts. See id., at 283, 737 S. E. 2d, at 359 (majority opinion). It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop."

<u>Heinen</u>, 574 U.S. at ___, Slip Opin. P. 13.

Magistrate Judge Coody erred in his recommendation when he concluded that a Officer Wilson was reasonable when he stopped McCullough for failing to display a plainly visible tag. (Doc.22-7-8) By statute, the alphanumerics must be plainly displayed. He further misconstrued the application of facts to the law when he erroneously held that Wilson was reasonable even if he was wrong about the state law. <u>Heinen</u> doesn't apply when the traffic statute has been construed by an state appellant court. Judge Coody, and Judge Thompson, completely ignored

-14-

<u>Whisenant</u>, which construed "plainly visible" and the alphanumerics in the statute. (Id, 8)

The design and specification of a proper tag in Alabama is the function of the State of Alabama Department of Revenue. 1975 Ala. Code, §32-6-51 provides in part that a proper  license tag must be "..prescribed and furnished by the Department of Revenue..".

Recently, there has been a proliferation of private tags promoting various organizations or causes such as the "University of Alabama" or "Auburn University" or whoever. Technology has changed in the production of car tags.  All car tags  are produced by digital license plate printing.

The Motor Vehicle Division of the Alabama Department of Revenue has published new guidelines on  the production of license tags entitled: "NEW GUIDELINES FOR DESIGNING ALABAMA LICENSE PLATES September 2013", [located at link at bottom of the web page at http://revenue.alabama.gov/motorvehicle/forms.cfm] (Doc.20-6, Ex.6). These new guidelines emphasize the importance of the tag numbers. It states: "This technology and visibility of the alphanumerics are enhanced for law enforcement purposes." (Id, at p.1, ¶1).  It provides that

-15-

there be a maximum of 6 alphanumerics printed in black, and "The license plate number area must be free of graphics that would obscure the readability of the characters or reader plate technology". (Id, at p.1)

The word "ALABAMA" must be placed at the top of the license plate. (Id, at p.2)  Logos are limited in size and location to allow space for 5 or 6 alphanumerics. Id. Heavy coloration is to be avoided in the alphanumeric sections because it might "reduce legibility for law enforcement." (Id, at p.4) The emphasis in these new guidelines is on the alphanumeric characters for law enforcement purposes.

There is a prior Department of Revenue  regulation effective October 12, 2012 entitled "License Plate Design Specification", Administrative Code 810-5-1-.217. It states, in part:  "(2) The license plate number area must be free of graphics that would obscure the readability of the characters on the license plate." and "(4) 'Alabama' must clearly be visible and must appear at the top of the license plate so that law enforcement can readily identify the state of issuance.  'Alabama' must appear in font URW Basker Twid.  The font size must be at least 80 points.

-16-

This will permit law enforcement to readily identify the state of issuance." (Doc.20-7, Ex.7. at pp.1-2)

Judge Thompson erred when he misconstrued the statutes and case law when he opined that 1975 Ala. Code § 36-6-51 "could be interpreted to require the word "ALABAMA" be fully visible" on all Alabama car tags. The statutes unequivocally state the numbers must be "plainly visible", not that the word Alabama be "fully visible", and so does Whisenant. Further, he erred when he based his decision on the speculation that the purpose of the statute is to make the car tags a general "ID" for the public in general, especially when the car is driven out of state. (Doc.28-2-3)

Officer Wilson had license tag reader technology in his vehicle. He scanned McCullough's tag before he initiated his sirens. He knew exactly where the vehicle had been, who it belonged to, the month of registration, the year of validation, the color of the tag which matched that of a typical Alabama tag, and that it was a "Heart of Dixie" tag-Alabama being the only state with "Heart of Dixie" on it. Wilson knew it was an Alabama tag before he made the decision to arrest. Further, there was enough of

the letters of "ALABAMA" at the top of the tag to know without a doubt that it was Alabama tag. Wilson quickly, punctually, and without undue delay determined that it was a Alabama license tag. Even Magistrate Judge Coody admitted that by looking at the tag, "it most likely is an Alabama plate." (Mot.To Sup.Tr., Doc. 25-42) Coody admitted that the full name is "partially obscured", and everything else is slightly obscured except the tag number. (Id. 44).

The alphanumerics on McCullough's license plate were plainly visible and tag plainly legal. "If it is not plainly visible that the object is a valid license tag, an officer has probable cause to believe that the statute is being violated." U.S. v. DeJesus, Case No. 2:09-CR-22-WKW, Doc. 70, p. 2 (U.S. District Court, Mid. Ala. 2009)(Judge Watkins construing Ala. Code, 1973, §32-6-51) Under case law, statute and guidelines, it is the alphanumerics that must be "plainly visible". The tag was plainly visible, readily identifiable, plainly legal, and Wilson knew it. The words "Alabama", "Heart of Dixie, "God bless America", and the year and month decals, were not visibly obstructed to such an extent that

Ala. Code, 1973, §32-6-51 was violated.

It was a violation of <u>Terry</u> for Wilson to initiate a traffic stop on I-85 because there was no minor or often violated traffic violation committed in the presence of Wilson before he initiated his emergency lights. McCullough did not violate the traffic offense Ala. Code 1975, §32-6-51 regarding his rear tag. Furthermore, Wilson was not deprived of any information required by Alabama Law to be displayed by McCullough on his truck. Therefore, Wilson's initiation of a traffic stop was unreasonable under the Fourth Amendment. "The touchstone of the Fourth Amendment is reasonableness...." <u>United States v. Knights</u>, 534 U.S. 112, 118, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001). Thus, in order to determine whether or not a specific Fourth Amendment requirement such as probable cause or reasonable suspicion has been met, the court must determine if the officer's actions were reasonable. <u>Ornelas v. United States</u>, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996).

Based upon the scanned image or picture appearing on his computer screen inside his vehicle, Wilson did not have probable cause for a traffic stop or later for the

search of the truck. Therefore, the initial traffic stop was unreasonable and violated the Fourth Amendment to the United States Constitution, which states: "The right of the people to be secure in their persons, houses, papers, and effects, against an unreasonable searches and seizures, shall not be violated, ...".

The search of the truck, McCullough,  and the hotel room,  and the seizures made  and statements given  were unreasonable and  illegal because it was without a valid traffic stop, and therefore without an valid arrest, arrest warrant, a valid search warrant, or court order, in violation of the Fourth and Fifth Amendments of the United States Constitution.   All evidence seized should be excluded by application of Weeks v. U.S., 232 U.S. 383,398 (1914), Mapp v. Ohio, 367 U.S. 643 (1961).

**ISSUE 2– The sentencing judge committed abuse of discretion when he did not re-assign the case back to the original judge, or when it was first assigned.**

On November 17, 2014 Judge Thompson presided over a petition for revocation of supervised release in regard to Defendant in United States vs. Roger Lardrell McCullough, Case No. 3:07cr146-MHT in which evidence was taken, and

defendant testified. (Doc.15-1, Revocation Transcript, Ex.1, Govt. Response to Motion to Suppress, Doc.15)  The facts of the revocation petition were the same facts of the present case.  Judge Thompson  was very familiar with facts of this case because McCullough testified before Judge Thompson who then revoked his supervised release and sentenced him to the Fellowship House in Birmingham, Alabama. (Case 3:07cr146 Doc. 50)

In the present case, Judge Thompson  ruled on all pretrial motions including the motion to suppress.  He was more acquainted  with the facts and circumstances of this case than Judge Dubina.

On August 21, 2015 Defendant pled guilty conditionally to all counts without a plea agreement.  On the same day, the case was re-assigned to Eleventh Circuit Court of Appeals Judge Joel Dubina sitting by designation. (See docket entry).  On October 28, 2015 McCullough filed his motion re-assign the case back to the Judge Thompson. (Doc.23).

On changing of a judge, Federal Rules of Criminal Procedure, Rule 25(b) states:

"(b) After a Verdict or Finding of Guilty.

-21-

(1) In General.  After a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability."

First, Judge Dubina committed an abuse of discretion when he did not re-assign the case back to Judge Thompson, or when Judge Thompson assigned it to Judge Dubina in the first place,  because there were no circumstances under which it could be said, much  less inferred, that Judge Thompson on the day of sentencing  "cannot perform those duties because of absence, death, sickness, or other disability." FRCrP, Rule 25 (b)(1). This is not a technical violation of Rule 25. Judge Dubina was told, and knew, that Judge Thompson was in the courthouse, and not dead,  sick or disabled. (Doc. 59-8-9) Judge Dubina acknowledged that he was asked by Judge Thompson and Judge Watkins to sentence in a number of cases. A crowded or overloaded docket is not a listed reason in Rule 25. Therefore, the failure to re-assignment the case back to Thompson was an abuse of discretion.    Judge Dubina stated in passing that he guessed that he abused his

-22-

discretion, which is an acknowledgment of a Rule 25 violation. He knew Judge Thompson was not sick or disabled! (Doc.59-9).

Second, Dubina abused his discretion in not granting the motion because he was unfamiliar with the case. Normally, the sentencing judge has broad discretion to determine whether he can sentence in a case he did not try. However, in a unique case such as this, the record should affirmatively reveal that the judge has reviewed the entire record, which included the motion to suppress and revocation of supervised release hearing transcripts, and the sentencing memorandum. An appellate court should not speculate on whether the court has familiarized itself with the record, and it is err when a new judge who does the sentencing is not familiar with the entire record. U.S. v. McGuiness, 769 F.2d 695, 695-96 (11th Cir. 1985). The record shows unfamiliarity. Id, 596.

The Sixth Circuit construed and distinguished McGuiness in U.S. v. Winkle, 477 F.3d 407 (6th Cir. 2007). In that Rule 25 violation case, appellant Winkle first had Judge Katz for pretrial events, then it was assigned to Judge Potter for trial, then back to Judge Katz for

-23-

sentencing. The Sixth Circuit noted that remand for a
technical violation was unwarranted because there was no
objection made to the transfer in the first place.
Furthermore, the remedy for the technical violation would
result in the same harm because the trial judge had
retired, and it would have to be assigned to a new judge.
Id, at 419-20.  McCullough filed objections to the
assignment and argued his motion in court. (Doc.13-motion
to re-assign & objections, Doc.59-5-9-Sent. Trans.) And
Thompson was in the courthouse and available for
sentencing. (Id, 9)

    Based upon inferences drawn from the record, Judge
Dubina was not familiar with the record and history of
this case. Judge Dubina did not know of or read the motion
to re-assign until during the sentencing hearing when it
was handed to him. (Doc.59-5) He was unaware that a
verdict or guilty plea had been taken on the charges, and
that the U.S. Magistrate had already taken the guilty
plea. (Id, 6) Based upon his statement that there had been
no verdict, finding of guilty, or that there was a
petition for revocation of release, it is inferred that
Judge Dubina wasn't familiar with the record and didn't

-24-

read the revocation of supervised release transcript. (Id)

It was attached as an exhibit to the Government's response

to the motion to suppress and part of the record. (See

Doc.15-1, Ex.1,Govt.Mot.Suppress, Doc.15)

This was not a simple or normal sentencing hearing as

Judge Dubina inferred. (Doc. 59-8)  McCullough entered a

plea of guilty on the condition that he could appeal the

motion to suppress and the sentence. Judge Thompson was in

a much better position  to sentence defendant because he

had the opportunity to judge the demeanor and temperament

of Defendant during the revocation of supervised release

hearing, which Judge Dubina didn't.  This was critical

because McCullough was sentenced to the Fellowship House

for his violation of  his supervised release. The same

judge who heard the basically all of the evidence,

observed witnesses, and observed the demeanor and

temperament of McCullough during the revocation hearing

and resulting sentence hearing should have been the same

judge to render sentence in this case. In his Motion for a

Downward Variance and the supporting Sentencing

Memorandum, McCullough's testimony at the revocation

sentencing  was made an issue. Thompson heard McCullough's

testimony before he sent him to the Fellowship House. It was important what McCullough said because, frankly, it is rare that this kind of supervised release violation resulted in being sent to a rehabilitation facility. (See U.S. v. McCullough, Case No. 3:07cr146-MHT, Doc. 88-59-71; Doc.15-1-59-71, Revocation Transcript, Ex.1 to Govt. Response to Motion to Suppress, Doc.15) It is inferred that Judge Dubina didn't read this critical testimony. (See Sent. Hearing, Doc.59-5-9). The record should reflect that a new judge should be familiar with all pretrial motions and trial transcripts before he sentences. (See U.S. v. Dowd, 451 F.2d 1244, 1256 (11th Cir. 2006).

Furthermore, unlike Judge Katz in Winkle who read 34 letters written on Winkle's behalf, it is inferred that Judge Dubina read 2 out of the 6 letter exhibits submitted with McCullough's sentencing memorandum in regard to the motion for downward variance. See U.S. v. Winkle, 477 F.2d at 407. (Doc.59-14,17,26).

Judge Dubina did not read, and was not familiar with, the pivotal case of U.S. v. Pepper, 562 U.S.476, 131 S.Ct.1229, 179 L.Ed. 204 (2011) cited in McCullough's Sentencing Memorandum. It provided the legal support for

his motion for downward variance based upon a pre-
indictment, post indictment/post guilty plea
rehabilitative conduct analogous to the post sentencing
rehabilitative conduct in <u>Pepper</u>. (Sent. Hearing, Id, 11-
14, Sentencing Memorandum, Doc.40-7-14).


        The sentence should be vacated, and remanded to Judge
Thompson for re-sentencing.

        **Issue 3-The sentence was procedurally and
substantively unreasonable because the Judge did not
consider McCullough's "postsentencing rehabilitation"
arguments.**

        In reviewing a sentence for reasonableness, there are
two steps. It is first reviewed for procedural error such
as not considering 18 U.S.C. § 3553(a) factors. Further,
the sentencing court must "satisfy the reviewing court of
the fact that it has considered the parties' arguments and
has a reasoned basis for making its decision," see <u>Rita v.
United States</u>, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468,
168 L.Ed.2d 203 (2007)." <u>United States v. Kulman</u>, 711 F.3d
1321, 1326. (11th Cir. 2013).

        It is then reviewed for substantive reasonable for an

abuse of discretion. One way is for the district court to fail to give "consideration to relevant factors that were due significant weight,.." Id, 1326.

The sentencing court erred procedurally and substantively when it did not consider and apply McCullough's arguments for pre-indictment/post indictment/post guilty plea rehabilitation conduct analogous to the "postsentencing rehabilitation" holding in U.S. v. Pepper, 562 U.S. 476, 131 S.Ct., 1229, 179 L.Ed 204(2011). This court should adopt Pepper by analogy as the rule in the Eleventh Circuit and apply it to the circumstances of this case. It  held:

> "...when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate circumstances, support a downward variance from the advisory guidelines."

Pepper, 562 U.S. at 490, 179 L.Ed. 2d at 214. The period of time of conduct that the Supreme Court looked at was that time after Pepper was sentenced, and while he was on three different appeals of his sentence. Most of that time he was on supervised release. Id., 482.

McCullough's case is analogous and very similar.

-28-

McCullough's supervised release in <u>U.S. v. McCullough</u>,
Case No. 3:07cr146-MHT, was revoked on November 17, 2014.
His violation conduct is the exact conduct in this case.
Judge Thompson sentenced him essentially to four months
time served,  and then to 20 months on supervised release
to the Fellowship House, in Birmingham,  Alabama. (See
<u>U.S. v. McCullough</u>, Case No. 3:07cr146MHT, Doc.88-59-71)
In the case at hand, the time period to consider
rehabilitative conduct was  after his supervised release
revocation on November 17, 2014, up to his sentencing in
this case on November 23, 2015. In the <u>Pepper</u> and
McCullough cases, it's the conduct during the time they
are both waiting to be sentenced, and on supervised
release.

   McCullough's conduct while waiting sentencing in this
case, or his postsentencing conduct arising from the
revocation case, were pertinent to the §3553(a) factors.
The <u>Pepper</u> Court stated:

        "For example, evidence of postsentencing
rehabilitation may plainly be relevant to "the history and
characteristics of the defendant." §3553(a)(1). Such
evidence may also be pertinent to "the need for the

sentence imposed" to serve the general purposes of
sentencing set forth in §3553(a)(2)-in particular, to
"afford adequate deterrence to criminal conduct, "
"protect the public from further crimes of the defendant,
" and "provide the defendant with needed educational or
vocational training . . . or other correctional treatment
in the most effective manner." §§3553(a)(2)(B)-(D); see
McMannus, 496 F.3d, at 853 (Melloy, J., concurring) ("In
assessing . . . deterrence, protection of the public, and
rehabilitation, 18 U.S.C. §3553(a)(2)(B), ( C) & (D),
there would seem to be no better evidence than a
defendant's post-incarceration conduct"). Postsentencing
rehabilitation may also critically inform a sentencing
judge's overarching duty under §3553(a) to "impose a
sentence sufficient, but not greater than necessary" to
comply with the sentencing purposes set forth in
§3553(a)(2)."

Pepper v. United States, 562 U.S. at 491

    Judge Dubina never considered this conduct under the
guise of Pepper. Since residing at the Fellowship House,
McCullough has turned himself around. Located in
Birmingham, Alabama, the Fellowship House is a non-profit

agency which provides substance abuse recovery treatment
designed for alcoholics and drug addicts. They live on
campus and work in the community. (Doc.40-4,
Ex.4-FellowshipHouse). McCullough  made great improvement
partly because he is not living in Lee County where old
influences prevailed and tempted him. He has been taken
out of an environment where he might "back-slide". For the
first time, he is getting training on how to survive in a
big city by working hard. Furthermore For the first time,
he is in a drug treatment program and drug free, a point
pertinent to the Pepper Court. Id, 492.   (Doc.40-1,  Ex.
1-Beth Bachelor, Chief Executive Officer, Fellowship
House, letter)

     While living at the Fellowship House, McCullough
worked at UAB Hospital.  He was  employed through a
temporary agency and worked for Environmental Services on
the Heart & Vascular and Radiology units. He prepared
surgical rooms, then cleaned up after surgery.  It was a
very important job.  Derrell F. Lee, his supervisor, noted
that McCullough was an excellent worker, a great asset,
and a dependable. He demonstrated the core values: "work
together, own it, do right, and always cares." Notably,

Lee pointed out that McCullough was "willing to go the
extra mile to help others to make sure the work gets
done." McCullough was an asset. His manager was  thankful
that he was  "part of our team." (Doc.40-2, Ex. 2, Derrell
F. Lee Letter)

Furthermore, he was actively involved in the lives of
his four children and helps support them. (Doc.40-1, Ex.1-
letter from Beth Bachelor, Chief Executive Officer,
Fellowship House; PSR-14,¶60).

Last, his postsentencing conduct was an indication of
his likelihood of recidivism.  McCullough had done well,
and demonstrated self-motivation.  Like the <u>Pepper</u> Court
said:

> "Pepper's postsentencing conduct also sheds light
> on the likelihood that he will engage in future criminal
> conduct, a central factor that district courts must assess
> when imposing sentence. See §§3553(a)(2)(B)-( C); <u>Gall</u>,
> 552 U.S., at 59, 128 S.Ct. 586, 169 L.Ed.2d 445 ("Gall's
> self-motivated rehabilitation . . . lends strong support
> to the conclusion that imprisonment was not necessary to
> deter Gall from engaging in future criminal conduct or to
> protect the public from his future criminal acts" (citing
> §§3553(a)(2)(B)-a( c))."

Id., 492. McCullough has done well.

Vernell Welch, his mother,  stated in court that his
moving to Birmingham was the best thing that happened to

him. She has seen changes in him. In her opinion, the only thing he needed was to get away from the Opelika environment and move to Birmingham where there were more opportunities. (Doc.59-23-33)

The best way to have sentenced McCullough and give him a reasonable, fair, and  sufficient sentence, was to have  seen what he had  been doing at the Fellowship House.  It revealed  his purpose in life: stay away from a bad environment by moving to a new location, get drug treatment and stop doing drugs, get a good and important job, work hard, manage his money, support his children, stay out of trouble. Be productive. Once again, the <u>Pepper</u> Court stated:

> "Finally, Pepper's exemplary postsentencing conduct may be taken as the most accurate indicator of "his present purposes and tendencies [131 S.Ct. 1243] and significantly to suggest the period of restraint and the kind of  discipline that ought to be imposed upon him." Ashe, 302 U.S., at 55, 58 S.Ct. 59, 82 L.Ed. 43. Accordingly, evidence of Pepper's postsentencing rehabilitation bears directly on the District Court's over-arching duty to "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing. §3553(a)."

Id.,492-93.

McCullough's "present purposes and tendencies" were demonstrated at sentencing through his involvement with

-33-

his probation officer in Birmingham.  Since January 12, 2015 Michelle C. Bryant, United States Probation Officer in the Northern District of Alabama in Birmingham has supervised McCullough. She noted that he has successfully completed the impatient program at the Fellowship House and is now in the Transitional Program where he resides. Mccullough is actively bettering himself by participating in "continuing care groups, submit to drug testing, and attend twelve step (AA/NA) recovery meetings." He is "complaint with U.S. Probation". (Doc.40-3,  Ex.3, Michelle Bryant Letter; Doc.40-4, Ex. 4-Fellowship House)

The Sentencing Judge never read, heard of, knew what court it originated from, considered the holding, or considered Pepper before the sentencing hearing. (Doc.59-11). Post Rehabilitative Conduct applied to the facts of this case was a new theory.  It was important for Judge Dubina to evaluate and give a studied consideration to McCullough's arguments based upon a Supreme Court case before the sentencing hearing began. He relied upon what his law clerk had to say during the hearing. She told him he didn't have to consider it. (Doc.59-14).

Judge Dubina stated that he was going to consider two

-34-

letters that were submitted through the U.S. Probation Officer as part of the PSR. He stated:

"But my law clerk is telling me that I don't have to consider those factors if I don't want to, but I can if I want to.  And I will say for the record I have considered a letter I received from Beth Black, case manager at Impact Family  Counseling.  I've considered another letter from Gregory  Billings at Fellowship House, Inc., who all speak very favorably of your client. "

(Doc.59-14 Sentencing Transcript) What about the other four exhibits attached to the Sentencing Memorandum?

Judge Dubina stated several times that he was going to consider the letters  when he imposed sentence, and give it the appropriate weight he thinks it's due. (Id, 14,17, 26). He's talking about the Black and Billings letters. This indicated that Dubina did not give due consideration to the arguments of counsel, and the other exhibits that supported his §3553(a) arguments. We conclude this is procedural unreasonableness in the sentence. Rita,  551 U.S. at 356.

Judge Dubina erred when he did not consider what Pepper stood for. Judge Dubina demonstrated this when he stated:

"But based upon the conduct of the offender, which led to his qualification as a career offender, I see no

-35-

factors under 18 U.S.C. Section 3553(a) that would warrant
a variance and the  imposition of a non-guideline
sentence."

     Judge Dubina didn't understand that <u>Pepper</u> does not
put any qualifier on the types of crimes that the
defendant must be guilty of in order to have post
conviction rehabilitative conduct come into play. The
conduct that led to McCullough's qualifying as a career
offender were two prior trafficking marijuana convictions
for small amounts. (See USSG §4B1.1(a)(3)) What Judge
Dubina really said was that he didn't consider any post
conviction rehabilitative conduct when considering the
§3553(a) factors which <u>Pepper</u> talked about. In regard to
the review of the substantive reasonableness of the
sentence, Judge Dubina did not give "consideration to
relevant factors that were due significant weight" <u>Kulman</u>,
at 1326. He didn't consider the §3553(a) factors based
upon the sole fact of the two prior marijuana trafficking
convictions. (Doc.59-26)

     B. The sentence was unreasonable because 294 months
under USSG §4B1.1, Career Offender, for selling small
amounts of marijuana on two prior occasions is overkill

-36-

and an abuse of discretion.

Under 18 U.S.C. §3553(a) this court should adopt the "parsimony" principal. It should hand down a sentence which is "stingy enough to avoid one that is too long, but also that it is generous enough to avoid one that is too short." U.S. v. Irey, 612 F.3d 1160, 1197 (2010)(en banc). This is also known as the "Goldilocks principal" which is a directive  for sentences to be "..just right to serve the purposes of §3553(a)." U.S. v. Hill, 643 F.3d 807, 884 (11th Cir. 2011).

The career offender guideline range of 262-327 months,  substantially overstated the harm committed. McCullough had two prior marijuana distribution convictions that put him in the career offender status: one state conviction for "possess[ion of] marijuana for other than personal use" [Ala.Code §13A-12-213(1)], and one federal distribution case. (See USSG §4B1.1(a)(3))The total amount of marijuana found in both cases do not indicate McCullough was  a high level, big-time drug dealer/importer/distributor who ran a sophisticated and wide-ranging operation involving many people and great quantities of marijuana.

-37-

The total amount of weight of marijuana seized in the two prior cases being used to place McCullough in career offender status is small: 77 grams in U.S. v. McCullough, 3:07cr146-MHT, and an unknown amount described as 2 large freezer bags and 2 plastic bags in State v. McCullough, CC-2007-662.(PSR-11-12, ¶¶41-42). How much is that? This court shouldn't speculate. And this case involved 1.7 kilograms of marijuana. (PSR-6, ¶17).

Also, there is a difference in drugs. This is not a heroin, crack cocaine, or methamphetamine case involving devastatingly addictive and harmful drugs. The effects of marijuana are less serious. Its' addictive power is not as destructive.

The recommended sentence of 262-327 months under the career offender guidelines depicted a worst-case scenario. Dubina sentenced McCullough to 294 months. Under 18 USC §3553(a) the court should "impose a sentence that is sufficient, but not greater than necessary".. to achieve equitable sentencing purposes. The sentence is a terrible over-kill, and unnecessary to achieve a just and fair punishment. It was unreasonable and irrationally long. The career offender guidelines and sentencing tables

simply overstated and exaggerated the actual harm done, and Judge Dubina's sentence reflected that.

## CONCLUSION

The Court should reverse and remand for a new trial regarding the motion to suppress. Alternatively, the sentence should be vacated and remanded to Judge Myron Thompson for a new sentencing hearing.

## CERTIFICATE OF COMPLIANCE

This brief is in compliance with FRAP Rule 32 (a)(7)(B)(i). It contains 8140 words.

/s/Paul R. Cooper
PAUL R. COOPER (COO022)
COOPER & COOPER
Attorney for Appellant
312 Scott Street
Montgomery, AL 36104
(334) 262-4887
(334) 262-4880-fax
prc@cooperandcooperlaw.com

## CERTIFICATE OF SERVICE

I hereby certify on this the January 13, 2016, I have served a copy of the foregoing upon, John J. Geer, III, and Sandra J. Stewart. Assistant United States Attorneys, P.O. Box 197, Montgomery, AL by filing with the ECF electronic fling systems, or by U.S. Mail, and further I

have completed the CIP Web  upload on the same date at

January 13, 2016.

<u>/s/Paul R. Cooper</u>
PAUL R. COOPER