No. 15-15430-BB

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

ROGER LARDRELL McCULLOUGH,

Defendant/Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION
Case No. 3:15-cr-00115-JFD-CSC-1

---

BRIEF OF APPELLEE

GEORGE L. BECK, JR.
United States Attorney

SANDRA J. STEWART
Assistant United States Attorney

ATTORNEYS FOR APPELLEE
UNITED STATES OF AMERICA

United States Attorney's Office
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280
sandra.stewart@usdoj.gov

No. 15-15430-BB

*United States of America v. Roger Lardrell McCullough*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In compliance with Federal Rule of Appellate Procedure 26.1 and Eleventh

Circuit Rule 26.1-1, the United States Attorney for the Middle District of Alabama,

through undersigned counsel, certifies that the Certificate of Interested Persons

contained in Defendant/Appellant Roger Lardrell McCullough's brief is complete

except that the following additional individuals also have an interest in the

outcome of this case:

1.    Davidson, Kevin P., Assistant United States Attorney, Middle District of

Alabama, forfeiture counsel for the United States in the district court; and

2.    Stewart, Sandra J., Assistant United States Attorney, Middle District of

Alabama, counsel for the United States in this appeal.


/s/ Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The United States of America ("the Government") suggests that oral argument is not necessary in this case because the facts and legal arguments are adequately presented in the briefs and record before this Court, and the decisional process would not be significantly aided by oral argument.

# <u>TABLE OF CONTENTS</u>

*Page*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT ................................................... C-1 of 1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CONTENTS ................................................................ ii

TABLE OF CITATIONS .............................................................. v

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUES ....................................................... 1

STATEMENT OF THE CASE ......................................................... 2

    I.      COURSE OF PROCEEDINGS AND DISPOSITIONS BELOW .......... 2

          A.      Revocation Of Supervised Release ........................................... 2

          B.      Indictment ................................................................ 3

          C.      Motion To Suppress .................................................... 4

          D.      Magistrate Judge's Recommendation That Motions To

                 Suppress Be Denied .................................................... 6

          E.      Objections To The Suppression Recommendation .................... 7

          F.      Guilty Plea ................................................................ 8

          G.      Reassignment Of McCullough's Case ........................................ 9

          H.      Presentence Report .................................................... 11

# TABLE OF CONTENTS *(con't)*

*Page*

        I.    Sentencing ...................................................................12

  II.   STATEMENT OF THE FACTS ........................................17

  III.  STANDARDS OF REVIEW ...............................................25

SUMMARY OF THE ARGUMENT ......................................28

ARGUMENT ...................................................................30

  I.    THE DISTRICT COURT DID NOT ERR IN DENYING

      McCULLOUGH'S MOTION TO SUPPRESS.. ..............30

      A.   Applicable Fourth Amendment Law ........................30

      B.   Reasonable Suspicion And Probable Cause Existed For

           The Initial Traffic Stop. ............................................34

      C.   If Investigator Wilson Mistook The Law, That Mistake

           Was Reasonable. .......................................................37

      D.   The Stop Was Not Otherwise Unreasonable. ............39

      E.   The Evidence Seized As A Result Of The Searches Was Not

           Tainted. .....................................................................40

  II.   McCULLOUGH'S MOTION PURSUANT TO FED. R. CRIM. P.

      25(b) WAS PROPERLY DENIED BY THE SENTENCING

      JUDGE.. ......................................................................44

      A.   The Initial Reassignment Did Not Violate Rule 25(b) ............45

# <u>TABLE OF CONTENTS</u> *(con't)*

*Page*

      B.    <u>Judge Dubina Was Sufficiently Familiar With The Record</u>

          <u>To Sentence McCullough</u>. ........................................................50

III.    McCULLOUGH'S WITHIN-THE-GUIDELINES SENTENCE

      WAS BOTH PROCEDURALLY AND SUBSTANTIVELY

      REASONABLE.......................................................................53

CONCLUSION ........................................................................................57

CERTIFICATE OF COMPLIANCE......................................................58

CERTIFICATE OF SERVICE ...............................................................59

iv

## <u>TABLE OF CITATIONS</u>

*Page*

## <u>Supreme Court Cases</u>

*Davis v. United States*, 131 S. Ct. 2419 (2011) ........................................................43

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007) ....................................26

*Heien v. North Carolina*, 135 S. Ct. 530 (2014)........................................................37

*Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983) ................................... 25-26

*Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882 (1997)......................................32

*Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330 (1977) ...............................32

*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)....................................................31

*United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984) ...........................7, 43

*United States v. Pepper*, 562 U.S. 476, 131 S. Ct. 1229 (2001).......................52, 55

## <u>Eleventh Circuit Cases</u>

*Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183 (11th Cir. 2009) .......................48

*United States v. Alvarado*, 808 F.3d 474 (11th Cir. 2015) .....................................54

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) (en banc)...................46

*United States v. Brundidge*, 170 F.3d 1350 (11th Cir. 1999) .................................33

*United States v. Campa*, 529 F.3d 980 (11th Cir. 2008) (en banc) .................27, 54

*United States v. Capers*, 708 F.3d 1286 (11th Cir. 2013) ......................................25

*United States v. Caraza*, 843 F.2d 432 (11th Cir. 1988) ........................................48

*United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998)......................................31

# <u>TABLE OF CITATIONS</u> *(con't)*

*Page*

*United States v. Dowd*, 451 F.3 1244 (11th Cir. 2006) ..........................48

*United States v. Fuentes-Rivera*, 323 F.3d 869 (11th Cir. 2003) ...........................47

*United States v. Gibson*, 708 F.3d 1256 (11th Cir. 2013) .......................................25

*United States v. Goddard*, 312 F.3d 1360 (11th Cir. 2002).....................................41

*United States v. Gonzalez*, 550 F.3d 1319 (11th Cir. 2008) *(per curiam)*...............54

*United States v. Griffin*, 109 F.3d 706 (11th Cir. 1997) ..........................................32

*United States v. Harris*, 526 F.3d 1334 (11th Cir. 2008) ..........................................31

*United States v. Harris*, 928 F.2 1113 (11th Cir. 1991) ...........................................31

*United States v. Holt,* 777 F.3d 1234 (11th Cir. 2015)..............................................30

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (en banc) .....................26, 54

*United States v. Johnson*, 803 F.3d 610 (11th Cir. 2015).........................................55

*United States v. Lockett*, 674 F.2d 843 (11th Cir. 1982) ..........................................26

*United States v. Lopez*, 562 F.3d 1309 (11th Cir. 2009) ..........................................26

*United States v. Lopez-Garcia*, 565 F.3d 1306 (11th Cir. 2009)............................31

*United States v. Lueck*, 678 F.2d 895 (11th Cir. 1982) ............................................32

*United States v. Magluta*, 418 F.3d 1155 (11th Cir. 2005) .....................................33

*United States v. McGuinness*, 769 F.2d 695 (11th Cir. 1985) *(per curiam)* ..........48

# TABLE OF CITATIONS *(con't)*

*Page*

*United States v. Nixon*, 918 F.2d 895 (11th Cir. 1990) ...........................25

*United States v. Osario-Moreno*, No. 14-14447, slip op. at 9 (11th Cir.

   Mar. 1, 2016)...................................................................................27

*United States v. Petrie*, 302 F.3d 1280 (11th Cir. 2002) .........................27

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)...........................27

*United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001) .................31, 32

*United States v. Rodriguez-Lopez*, 363 F.3d 1134 (11th Cir. 2004).......27

*United States v. Rosales-Bruno*, 789 F.3d 1249 (11th Cir. 2015) ...........54

*United States v. Rothenberg*, 610 F.3d 621 (11th Cir. 2010) ..................27

*United States v. Saac*, 632 F.3d 1203 (11th Cir. 2011) .....................28, 53

*United States v. Silva*, 443 F.3d 795 (11th Cir. 2006).............................47

*United States v. Smith*, 741 F.3d 1211 (11th Cir. 2013)..........................43

*United States v. Sparks*, 806 F.3d 1323 (11th Cir. 2015) ........................33

*United States v. Spoerke*, 568 F.3d 1236 (11th Cir. 2009) ......................31

*United States v. Tobin*, 923 F.2d 1506 (11th Cir. 1991)..................... 32-33

*United States v. Tome*, 611 F.2d 566 (11th Cir. 2010) ...........................55

*United States v. Turner*, 626 F.3d 566 (11th Cir. 2010)....................53, 55

*United States v. Urben-Potratz*, 470 F.3d 740 (11th Cir. 2006).............45

## <u>TABLE OF CITATIONS</u> *(con't)*

*Page*

*United States v. Yuknavich*, 419 F.3d 1302 (11th Cir. 2005) ..................................32

### <u>Other Federal Cases</u>

*In re United States*, 614 F.3d 661 (7th Cir. 2010) ..................................................48

*United States v. Bourgeois*, 950 F.2d 980 (5th Cir. 1992)......................................48

*United States v. Casas*, 356 F.3d 104 (1st Cir. 2004).......................................26, 48

*United States v. Colón-Muñoz*, 318 F.3d 348 (1st Cir. 2003) ..........................48, 50

*United States v. Flores*, 798 F.3d 645 (7th Cir. 2015)............................................39

*United States v. Hall*, 171 F.3d 1133 (8th Cir. 1999).......................................26, 48

*United States v. Harris*, 679 F.3d 1179 (9th Cir. 2012) ...................................26, 48

*United States v. Soto*, 48 F.3d 1415 (7th Cir. 1995)...............................................48

*United States v. Thomas*, 114 F.3d 228 (D.C. Cir. 1997).................................26, 48

*United States v. Whitfield*, 874 F.2d 591 (8th Cir. 1989) .......................................48

*United States v. Winkle*, 477 F.3d 407 (6th Cir. 2007)...........................................48

*Virgin Islands v. Leonard*, 922 F.2d 1141 (3d Cir. 1991) ...............................48, 50

### <u>State Cases</u>

*Whistenant v. State*, 278 So.2d 183 (Ala. Crim. App. 1973)...............................7, 36

### <u>Statutes</u>

18 U.S.C. § 922(g)(1)..............................................................................................1, 4

## <u>TABLE OF CITATIONS</u> *(con't)*

*Page*

18 U.S.C. § 924(c)(1)(A)(i) ...............................................................1, 4

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. 3553(a) ..............................................................................12

18 U.S.C. § 3742(a) .............................................................................1

21 U.S.C. § 841(a)(1)........................................................................1, 4

28 U.S.C. § 137................................................................................49

28 U.S.C. § 1291.................................................................................1

## <u>Other Authorities</u>

**Ala. Admin. Code**

    r. 810-5-.217(4) (2012)................................................25, 35

**Ala. Code (1975)**

    Ala. Code § 32-6-51 (1975) ................................. 5, 6, 7, 34, 36, 37, 39

    Ala. Code § 40-12-242 (1975) .........................................36

**Black's Law Dictionary** (10th ed. 2014)....................................46

**Federal Rules of Appellate Procedure**

    Rule 3................................................................................1

    Rule 4(b)...........................................................................1

**Federal Rules of Criminal Procedure**

    Rule 23(c) .......................................................................46

## <u>TABLE OF CITATIONS</u> *(con't)*

*<u>Page</u>*

Rule 25...................................................................................................44

Rule 25(b)..........................................................................................9, 44

**UNITED STATES SENTENCING GUIDELINES MANUAL (2015)**

§ 2K2.1 ...............................................................................................11

§ 4B1.1(a) ...........................................................................................11

## <u>STATEMENT OF JURISDICTION</u>

A grand jury in the Middle District of Alabama returned a three-count indictment charging Defendant/Appellant Roger Lardrell McCullough ("McCullough") with one count of possession with the intent to distribute marijuana (21 U.S.C. § 841(a)(1)); one count of using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)(i)); and one count of being a felon in possession of a firearm (18 U.S.C. 922(g)(1)). The district court had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3231.

After his motion to suppress was denied, McCullough pled guilty to the three counts in the indictment, without the benefit of a plea agreement, reserving the right to appeal the denial of his suppression motion. (Doc. 34; Doc. 59-2-3) Final judgment was entered on December 7, 2015. (Doc. 48) McCullough timely filed his notice of appeal before the entry of judgment on January 3, 2015. (Doc. 47) McCullough's convictions and sentence are, therefore, reviewable by this Court pursuant to Rules 3 and 4(b) of the Federal Rules of Appellate Procedure; 18 U.S.C. 3742(a); and 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Did the district court err in denying McCullough's motion to suppress?

2.     Did the sentencing court properly interpret Federal Rule of Criminal

Procedure 25(b) and deny McCullough's motion to reassign his case to the

initial district judge?

3.     Was McCullough's sentence both procedurally and substantively

reasonable?

**STATEMENT OF THE CASE**

**I.**     **COURSE OF THE PROCEEDINGS AND DISPOSITIONS BELOW**

**A.**     **Revocation Of Supervised Release**

At the time he was arrested on the charges in this case, Defendant/Appellant

Roger Lardrell McCullough ("McCullough") was on supervised release. (Doc. 46-

11, ¶ 41; 12, ¶ 44 (SEALED))[1]  McCullough had been convicted in the United

States District Court for the Middle District of Alabama, in case number

3:07cr146-01-MHT, for possession with the intent to distribute marijuana and for

being a felon in possession of a firearm. *Id*. at 11, ¶ 41.  On April 23, 2008, United

States District Judge Myron H. Thompson sentenced McCullough to 46 months in

prison for those convictions, to be followed by three years of supervised release.

*Id*.  It was after McCullough served his imprisonment time on those offenses and

---

[1] Doc. 46 is McCullough's Presentence Investigation Report in this case. McCullough has included that document in Volume 2 of his Appendix, all of which he filed under seal, at Tab A6.

2

during his three years of supervised release on those previous charges that he committed the instant offenses.

On November 17, 2014, Judge Thompson conducted a hearing and revoked McCullough's supervised release. (Doc. 15-1) At that hearing, McCullough told the Court under oath that he committed the supervised release violations in that case (which relied on the same facts as in this case) in an attempt to pay off his deceased father's debts and so that he could retain the house his father had left to him. *Id*. at 47-58. He also needed the money for living expenses and to help support his children. *Id*. He also testified that he had been dealing drugs since he was a child and had been distributing drugs since at least 2008. *Id*.

At the conclusion of the hearing, Judge Thompson found that McCullough was guilty of grade A violations of the terms of his supervised release; he revoked McCullough's supervised release; and he sentenced McCullough to four months in prison to be followed by 32 months of supervised release during which time he was to comply with the mandatory and standard conditions of supervised release, and the special term that he reside at Fellowship House in Birmingham, Alabama, for 20 months, obtain full-time employment, and participate in a substance abuse program. (Doc. 15-1-69-70)

**B.    Indictment**

On March 18, 2015, McCullough was indicted by a Middle District of

3

Alabama grand jury and charged with one count of possession with the intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (count one); one count of using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking offense, namely the possession with intent to distribute marijuana offense charged in the previous count, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count two); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count three).  (Doc. 1-1-2)  The three offenses were charged to have occurred on the same date, July 18, 2014, and in the same county, Lee County, Alabama.  *Id*.  The felon in possession count of the indictment charged that McCullough had been convicted of three prior drug offenses and with the offense of being a felon in possession of a firearm, specifically:  (1) possession with the intent to distribute a controlled substance and being a felon in possession of a firearm on or about April 23, 2008, in the Middle District of Alabama; (2) possession/receipt of a controlled substance on or about February 5, 1997, in the Circuit Court of Lee County, Alabama; and (3) possession/receipt of a controlled substance on or about December 11, 1997, in the Circuit Court of Lee County, Alabama.  *Id*. at 2.

## C.    **Motion To Suppress**

Before deciding to plead guilty, McCullough filed a Motion To Suppress in which he requested that all evidence seized in his case and all statements made by

4

him to law enforcement as a result of the initial stop and search of his automobile, and later during a search of hotel room 130 at the Clarion Hotel in Auburn, Alabama, be suppressed.   (Doc. 13)  In his motion, McCullough presented five arguments: (1) that the officer who stopped him did not have reasonable suspicion or probable cause to initiate the stop because that officer did not witness the violation of Ala. Code § 32-6-51 (1975), which requires that a license plate be plainly visible; (2) that the search of his truck was in violation of the Fourth Amendment because there was no probable cause for the traffic stop, no basis for his arrest, and no independent probable cause for the subsequent search of his truck; (3) that because his initial stop and the initial search were illegal, the subsequent search of Room 130 at the Clarion Hotel in Auburn, Alabama, even though conducted pursuant to a search warrant, was tainted by the initial illegal stop and search, and was also illegal; (4) that the application and affidavit in support of the search warrant for room 130 at the Clarion Hotel were defective because they failed to allege sufficient facts on which to base a probable cause determination and because the application and affidavit were not signed by the officer seeking the warrant; and (5) that the search of the hotel room was unlawful because the search warrant authorized a search on *June* 18, 2014, but it was not executed until *July* 18, 2014.  *Id.*

5

D.    **Magistrate Judge's Recommendation That Motion To Suppress Be Denied**

After the Government responded to the motion to suppress (Doc. 15; Doc. 17) and the court conducted a hearing (Doc. 25), United States Magistrate Judge Charles S. Coody recommended that the motion to suppress be denied (Doc. 22). In relevant part, Judge Coody found that the officer who stopped McCullough had probable cause to believe McCullough had committed a traffic violation, citing Ala. Code § 32-6-51 (1975) and concluding "that [McCullough's] license plate was not plainly visible as required by state law." *Id*. at 7.  Judge Coody relied on the following facts in support of his conclusion:

> An after market bracket with an eagle emblem almost completely obstructed the word ALABAMA at the top of the license, and the month and year of expiration of the tag were also obscured.  In addition, the "Heart of Dixie" emblem in the lower left corner and "God Bless America" across the bottom of the license plate were partially obstructed.  The court concludes that a reasonable officer in Investigator Wilson's position could have stopped the defendant's vehicle for failing to display a license plate that was plainly visible, and therefore, the stop was constitutionally permissible.  This is true even if Wilson was wrong about the requirements of state law.

*Id*. at 7-8.

Judge Coody also found that, "[w]hen [Officer] Wilson approached the truck and smelled the odor of marijuana, he then had probable cause to arrest McCullough," and incident to that arrest, to search the movable automobile in which McCullough was traveling.  *Id*. at 8-9.  Based on these findings, Judge

6

Coody concluded "that the initial traffic stop and subsequent search of McCullough's truck did not violate the Fourth Amendment, and the motion to suppress [was] due to be denied." *Id*.

Next, Judge Coody turned to the search of room 130 at the Clarion Hotel, finding that "after careful consideration, the court concludes that the warrant issued for the search of Clarion Hotel room 130 … was supported by probable cause." *Id*. at 9-12. And finally, Judge Coody found that Officer Wilson's reliance on the warrant was objectively reasonable and that, therefore, the good faith exception to the warrant requirement as outlined in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), applied. *Id*. at 12-16.

**E.    Objections To The Suppression Recommendation**

McCullough filed Objections to the Recommendation of the Magistrate Judge. (Doc. 23) In those objections, McCullough argued that the magistrate judge wrongly concluded that the initial traffic stop was based on probable cause. *Id*. at 1-5. McCullough contended that under the Alabama traffic statue at issue, Ala. Code § 32-6-51 (1975), as interpreted by the Alabama Court of Criminal Appeals in *Whistenant v. State*, 278 So.2d 183, 193 (Ala. Crim. App. 1973), and under Alabama Department of Revenue regulations, his license plate was "plainly visible" because the alphanumeric numbers on his tag were "plainly visible" and that was all that was necessary under the statue. *Id*. at 1-5. He further argued that

7

Officer Wilson's mistake of law was not reasonable because the Alabama appellate court had interpreted the statute at issue to mean only that the alphanumeric numbers on his tag need by "plainly visible." *Id*. at 2-3. He also argued that Officer Wilson's reliance on the statute to initiate the traffic stop was not objectively reasonable because when Officer Wilson stopped him, he knew from his license tag reader in his car that the tag was an Alabama tag; that it was a "Heart of Dixie" tag; to whom the car belonged; and the month and date of registration. *Id*. at 4-5.

McCullough also objected to the magistrate judge's conclusion that the search warrant was based on sufficient probable cause. *Id*. at 5-6.

United States District Judge Myron H. Thompson overruled McCullough's objections; adopted the recommendation of the magistrate judge; and denied the motion to suppress. (Doc. 28)

## F.    <u>Guilty Plea</u>

On August 21, 2015, McCullough pled guilty to the charges in the indictment without the benefit of a plea agreement. (Doc. 34) Magistrate Judge Coody took McCullough's guilty plea, pursuant to McCullough's consent (Doc. 33) and adjudicated him guilty (Doc. 24). In pleading guilty, McCullough reserved the right to appeal the denial of his motion to suppress and his sentence. (Doc. 31)

**G.**    **Reassignment Of McCullough's Case**

Also on August 21, 2015, McCullough's case was reassigned from Judge Thompson to Senior United States Circuit Judge Joel F. Dubina.  *See* entry dated 8/21/2015 on docket sheet after Doc. 35.  Over two months later, on October 28, 2015, McCullough filed an Objection To Re-Assignment Of Case To A New Judge And Motion To Re-Assign Back To The Original Judge And Brief.  (Doc. 38)   In his motion, McCullough cited Rule 25(b) of the Federal Rules of Criminal Procedure and argued that the initial reassignment of his case to Judge Dubina was an abuse of discretion because Judge Thompson was not unable to perform the sentencing duties in McCullough's case due to absence, death, sickness, or other disability.  *Id*. at 4-5.  McCullough argued that because Judge Thompson was the most familiar with his case due to his involvement in McCullough's supervised release revocation proceedings, which were based on the same facts underlying this case, Judge Thompson was in the best position to handle this related "somewhat complicated case."  *Id*. at 3.  Finally, McCullough contended that to change judges was a violation of his "Fifth Amendment Due Process Rights not to be deprived of liberty without due process of law, and his Sixth Amendment Right to a fair and impartial sentence by [a] judge with the most experience in the case.  The same judge who heard basically all of the evidence, observed witnesses, and observed the demeanor and temperament of McCullough during the revocation

9

hearing and resulting sentence hearings should be the same judge to render sentence in this case." *Id*. at 4.

Shortly after the commencement of McCullough's sentencing hearing, McCullough brought to Judge Dubina's attention the fact that he filed the motion requesting that his case be reassigned back to Judge Thompson, and he asked Judge Dubina to rule on the motion. *Id*. at 5. On being apprised that the motion had been filed, Judge Dubina informed McCullough that he had not seen the motion; he asked for a copy and received one; and he then read the motion. *Id*. Thereafter, Judge Dubina asked McCullough how Rule 25(b) applied in light of the fact that there had been no verdict or finding he was guilty. *Id*. McCullough then informed Judge Dubina that Judge Coody had already taken McCullough's guilty plea and adjudicated him guilty. *Id*. at 6.

McCullough further argued that, even though Judge Thompson had not presided at a trial on the charges in this case nor had he received McCullough's guilty plea, Judge Thompson had presided during the previous criminal proceedings in this case[2] and there was no evidence he could not continue those

---

[2] In fact, Magistrate Coody presided at both the suppression hearing and the change of plea hearing and was the most familiar with the proceedings in *this* case. Judge Thompson presided only at the proceedings in McCullough's prior federal case and the revocation of his supervised release in that prior federal case, and he conducted a *de novo* review of the motion to suppress. It is notable, however, that he did so without conducting any additional hearings.

duties due to absence, death, sickness, or disability. *Id*. at 8-9. Judge Dubina overruled McCullough's objections and denied his motion. *Id*. at 9, 37-38.

## H. **Presentence Report**

Before sentencing, the United States Probation Office for the Middle District of Alabama ("Probation") prepared a Presentence Investigation Report ("PSR") using the 2015 version of the United States Sentencing Guidelines Manual ("U.S.S.G."). (Doc. 46 (SEALED)) Probation determined that McCullough's offense level was 24 under U.S.S.G. § 2K2.1 because McCullough committed the instant felon in possession offense subsequent to sustaining two felony convictions for controlled substance offenses. *Id*. at 6-7, ¶¶ 17, 18. Probation then decreased McCullough's offense level by three levels based on his acceptance of responsibility, resulting in a total offense level of 21. *Id*. at 7, ¶¶ 24, 25, 28.

Probation also determined that McCullough qualified as a career offender under U.S.S.G. § 4B1.1(a) and that he faced a sentencing guidelines range as a career offender of from 262 to 327 months in prison. *Id.* at 7, ¶¶ 26-27.

Probation calculated McCullough's criminal history score, finding he had 14 criminal history points, which resulted in a criminal history category of VI. *Id*. at 12, ¶ 45. The 14 criminal history points were for the following: a February 5, 1997, conviction for possession of cocaine in the Circuit Court of Lee County, Alabama (three points); a December 11, 1997, conviction for possession of cocaine

11

also in the Circuit Court of Lee County, Alabama (three points); an April 23, 2008, convictions for possession with the intent to distribute a controlled substance (marijuana) and for being a felon in possession of a firearm in the United States District Court for the Middle District of Alabama (three points); and a January 27, 2009, conviction for first degree marijuana possession in the Circuit Court of Lee County, Alabama (three points). *Id*. at 8-12, ¶¶ 36, 37, 41, 42.  He also received two points for committing the instant offense while under a criminal justice sentence for the 2008 Middle District of Alabama convictions for possession with the intent to distribute a controlled substance and being a felon in possession of a firearm (two points). *Id*. at 12, ¶ 44.

McCullough filed four objections to his PSR.  (Doc. 46, "Addendum To The Presentence Report")  Probation responded to all of McCullough's objections maintaining its original determinations were correct. *Id*. at ¶¶ 3, 4, 6, 8.

## I.    <u>Sentencing</u>

Before his sentencing hearing, McCullough filed a Motion For A Downward Variance From The Guidelines, A Sentence Outside Of The Advisory Guideline System And Under 18 U.S.C. § 3553(a) (Doc. 39) and a Sentencing Memorandum (Doc. 40), attaching exhibits to both.  In support of his motion for a downward variance, McCullough argued that the court should grant him a downward variance from his sentencing guidelines range because (1) a sentence within that range

would be excessive in relation to his crimes; (2) because of his pre-indictment/post-indictment/post-guilty plea rehabilitation; (3) because the controlled substance involved was marijuana, not one of the more dangerous and addictive drugs like heroin, crack cocaine, or methamphetamine; and (4) because the amount of marijuana he possessed in this case was not large.  (Doc. 39)

In his sentencing memorandum, McCullough requested a sentence within a range of from 117 to 131 months in prison.  (Doc. 40)  In support of that sentencing range, McCullough argued that he should not be assessed six criminal history points based on his 1997 marijuana possession convictions.  *Id*. at 6-7.  In making this argument, McCullough acknowledged that he completed his sentences on those convictions within the 15-year period for criminal history purposes, but contended that because the sentences were completed within 14 years and 11 months of the current offense, the court should "round up" to 15 years and not count them toward his criminal history.  *Id*.  He also reasserted his argument that the court should grant a downward variance based on his pre-indictment/post-indictment/post-guilty plea rehabilitation.  *Id*. at 8-14.  Specifically, McCullough pointed to his successes following the revocation of his supervised release on his previous federal possession with the intent to distribute/felon in possession charges.  *Id*.  Those successes included his participation in a substance abuse recovery treatment program and his being drug free since beginning that treatment,

and his successful employment with UAB Hospital in Birmingham, Alabama. *Id*. He also pointed to his active participation in the lives of his children, whom he helped support. *Id*. at 12. Finally, McCullough argued than the length of his sentence under the sentencing guidelines was simply unreasonable because of the small amounts of marijuana involved in the prior convictions used to establish his career offender status and because his prior offenses and his current offense involved marijuana, a much less dangerous and addictive drug that heroin, crack cocaine, or methamphetamine. *Id*. at 14-16. McCullough attached three supportive letters to his sentencing memorandum attesting to his successful rehabilitation through the Fellowship House program. (Docs. 40-1, 40-2, 40-3)

United States Circuit Judge Joel F. Dubina conducted a sentencing hearing on November 23, 2015. (Doc. 59) After establishing that McCullough had pleaded guilty without the benefit of a plea agreement, *id*. at 2-3, Judge Dubina addressed McCullough's objections to the PSR and his motion for a downward variance. *Id*. at 3-21.

During his argument on consideration of his pre-indictment/post-indictment/post-guilty plea rehabilitation, McCullough noted that he had presented five letters in support of his position that McCullough was succeeding with rehabilitation and the court stated that it had looked at those letters. *Id*. at 10-11. Later, the court told McCullough that it understood that it could consider his pre-

14

indictment/post-indictment/post-guilty plea rehabilitation conduct in sentencing McCullough, but it did not believe that it was required to do so. *Id*. at 14. It also noted at that time that it was considering two letters McCullough had provided and taking the comments in those letters into consideration in sentencing McCullough. *Id*. The court also assured McCullough that it understood it could consider the rehabilitation conduct presented in deciding whether to grant a downward departure. *Id*. Finally, the court stated for the record that it was "considering all of these letters" presented by McCullough in devising a sentence for him, "including the two [it] pointed out." *Id*. at 17. It also stated that it was considering "everything that's been submitted to me," … "every single thing that's been given to me…" *Id.*[3]

During his argument on the application of the career offender provisions in determining his sentence, McCullough argued that he believed that application of the career offender guidelines in his case would result in an overly harsh sentence, although he admitted that he had no legal argument to support his contention that the career offender guideline should not be applied under the facts of his case. *Id*. at 17-19.

---

[3] The court also later indicated that it had reviewed and was familiar with the PSR.

The court overruled all of the objections McCullough made to the PSR making detailed findings on the record as to each objection. *Id*. at 22-27. It also denied his motion for a downward variance stating:

> And I've already stated earlier on the record that I have considered these letters. And I agree with defense counsel that clearly these letters do evidence some change of lifestyle, as pointed out in the letters. And the Court is considering those, along with everything else, before I impose sentence in this case. But based on the conduct of the offender, which led to his qualification as a career offender, I see no factors under 18 U.S.C. Section 3553(a) that would warrant a variance and the imposition of a nonguideline sentence.

*Id*. at 26.

The court sentenced McCullough within his sentencing guidelines range to 294 months in prison, the sentence consisting of 60 months on count one; 120 months on count three, to run concurrent to the sentence on count one; and 114 months on count two, that sentence to run consecutive to the sentences on counts one and three. *Id*. at 35-36. The court also ordered that on his release from prison, McCullough be placed on supervised release for a term of three years as to each of the counts of conviction, those three terms to be served concurrently and subject to mandatory, standard, and special conditions. *Id*. at 36-37. Finally, the court ordered that McCullough pay a special assessment fee of $100 on each count of conviction and that any fine be waived due to McCullough's inability to pay. *Id*. at 37.

McCullough did not object to the sentence as imposed on reasonableness grounds, but merely maintained his previously stated objections, including his objection to the court's denial of his motion to reassign McCullough's case back to Judge Thompson for sentencing.  *Id*. at 37-38.  The court overruled those renewed objections, and ordered the sentence imposed as stated.  *Id*. at 38.

Final judgment was entered on December 7, 2015 (Doc. 48).

## II.    STATEMENT OF THE FACTS

Other than the facts cited in part I of this brief above, the relevant facts are based on the suppression hearing testimony.  Judge Coody conducted a suppression hearing in this case, with McCullough's consent, on July 29, 2015. (Doc. 25)  Lee County Sheriff's Office Investigator Stanley Wilson was the only witness.  *Id*. at 4.  Wilson was assigned to the investigation division of the Lee County Sheriff's Office as a criminal interdiction investigator.  *Id*. at 5.  As a interdiction investigator, Wilson worked the interstate with a canine partner in Lee and Chambers Counties.  *Id*.

On July 18, 2014, Wilson was sitting stationary, parallel to traffic on Interstate 85 southbound, approximately at mile marker 68.  *Id*. at 5, 36-37.  While he was so positioned, he observed a red Ford pickup truck traveling in the left lane. *Id*.  The truck went by Wilson's marked patrol vehicle and his license plate reader read the license plate, and when it read it, the license plate popped up on his

17

screen. *Id*. at 5-6, 37. Wilson noticed that the plate was not plainly visible and was partially obstructed. *Id*. at 6. Because Wilson saw what he believed was a traffic violation, he pulled out from the median and followed the truck. *Id*. at 6, 37-38. As he was doing so, he ran the tag of the truck and activated his lights and siren. *Id*. at 6-7. At that time, Wilson had no information indicating that McCullough had committed any felonies and he only intended to conduct a traffic stop. *Id*. at 7, 50.

At first, the pickup truck did not stop or yield the right of way to Wilson's emergency vehicle, even though Wilson had his lights and siren going. *Id*. at 7. Wilson initiated his lights at approximately the 66 mile marker on I-85 southbound and began to follow the truck, still traveling southbound. *Id*. The truck slowed its speed down to between 50 and 55 miles per house after Wilson got behind it, but it did not stop for approximately four miles. *Id*. at 7-8. Wilson then notified his dispatch that he was behind the vehicle, but it was not yielding the right of way to him, and he notified the Opelika Police Department, the next jurisdiction ahead, to ask for assistance. *Id*. at 7-8. The vehicle continued to travel with its flashers on past Exit 64 and then exited at Exit 62 and continued onto Columbus Parkway in the Opelika City limits. *Id* at 8. As he was driving behind the truck at about 55 miles per hour with his windows rolled up and his air conditioner running, Wilson smelled the odor of raw marijuana coming from the vehicle. *Id*. at 8, 9, 49. He

18

had smelled marijuana before and had extensive training in detecting narcotics.  *Id.*
at 8.

    After exiting the interstate, the truck turned right, made an immediate right
into the parking lot of a Travelodge hotel, and came to a stop.  *Id.* at 9.  At that
time, Wilson got on his public address system inside his vehicle and ordered the
driver of the vehicle to get out and back up to the sound of his voice.  *Id.*  Wilson
then took the driver, McCullough, into custody for officer safety reasons while
Wilson made sure that no one else was in the truck.  *Id.*

    As he approached the truck, Wilson again smelled the odor of raw marijuana
emanating from the vehicle.  *Id.*  Once Wilson determined there was no one else in
the truck, he conducted a probable cause search of the truck based on his detection
of the marijuana smell.  *Id.* at 10.  During his search of the vehicle, he found a
black bag on the floorboard behind the center console of the car that was zipped
closed containing one gallon-size plastic bag with a plant substance believed to be
marijuana in it.  *Id.* at 10, 47, 48.  Wilson believed the amount of marijuana in that
bag to be about a pound.  *Id.* at 47.  He also found a large sum of U.S. currency --
$8,335 – wrapped in rubber bands in that same bag.  *Id.* at 10, 51-52.  Marijuana
residue was found inside the vehicle as well.  *Id.* at 47.

    After finding the money and marijuana, Wilson placed McCullough under
arrest for possession of marijuana and searched McCullough, finding $4,286 and

some loose change. *Id*. at 10-11, 47. He also found a Clarion Hotel room key inside an envelope labeled room 130. *Id*. at 11.

In addition to arresting McCullough for the marijuana, Wilson also wrote McCullough a traffic citation for failing to yield the right of way to an emergency vehicle and a warning citation for not having a plainly visible license plate. *Id*. McCullough's license plate was obstructed by an after-market reflective bracket with an eagle emblem on it that went around the whole license plate. *Id*. at 12. The bracket obstructed the word "ALABAMA" at the top of the plate. *Id*. Wilson believed that the obstruction of the word "ALABAMA" constituted a traffic violation in Alabama. *Id*.

After completing the searches, Wilson transported McCullough to the sheriff's office where he read McCullough his *Miranda* rights. *Id*. At that time, McCullough agreed to speak with Wilson without a lawyer present. *Id*.

Back at the sheriff's office, Wilson also conducted a Google search and called the nearest Clarion Hotel, which was on South College Street in Auburn, Alabama, in Lee County. *Id*. at 12-13. He asked whether Roger McCullough had a room at the Clarion Hotel, and was told that McCullough was a registered guest staying in room 130. *Id*. at 13. Room 130 was the number on the key found during the search of McCullough's person. *Id*.

20

After obtaining this information, Wilson believed he had probable cause for a search warrant. *Id*. at 14-15. He typed up an application for a search warrant and went with Corporal Quacy Drake to the residence of Lee County Circuit Judge Chris Hughes, where he obtained a search warrant. *Id*. at 14-15, 23, 46. At Judge Hughes's residence, Wilson and Drake informed Judge Hughes of the circumstances surrounding the initial traffic stop of McCullough and the subsequent searches, while Judge Hughes perused the application. *Id*. at 15. Judge Hughes had Wilson swear that the contents in his affidavit for the warrant were the truth. *Id*. at 15, 23, 24. The factual bases for the search warrant were (1) that McCullough was a local resident who lived within the city limits of Opelika; (2) he had a residence in Opelika; (3) the Clarion Hotel was in Auburn, in Lee County, Alabama, which was adjacent to Opelika; (4) it was common for criminals to use hotel rooms or abandoned houses as trap houses, where they stored their drugs and conducted drug transactions, in order to avoid the seizure of owned property by law enforcement; and (5) based on a his training and experience, it was likely that evidence of McCullough's drug activities would be found at the Clarion Hotel. *Id*. at 15-16. The search warrant affidavit and application were introduced into evidence as Government's Exhibit 4. *Id*. at 22. Judge Hughes signed the search warrant on July 18, 2015, at approximately 8:53 a.m., and Wilson executed the search warrant later that same day. *Id*. at 17.

When Wilson and other officers arrived at the hotel, they located room 130, knocked on the door several times, announced themselves as police, and entered the room with a key provided to them by a hotel clerk. *Id.* at 18. Inside the room, officers found three gallon-size bags containing approximately three pounds of a plantlike substance believed to be marijuana. *Id.* They also found a black Protégé suitcase containing assorted U.S. currency in the approximate amount of $1,260; a partially smoked marijuana cigarette; a black Guess bag containing two plastic bags of marijuana; loose marijuana residue; a digital scale; sandwich bags; Glad-size bags; Pelouze scales; a flathead screwdriver; a marijuana grinder; an ice bucket with marijuana residue in it; a Toshiba laptop computer; two Samsung flip phones; a bag of rubber bands; and a North American Arms .22 handgun. *Id.* at 18-19.

Government's Exhibit 2 was a photograph of the license plate on McCullough's truck. *Id.* at 21. That photograph shows that the "State of Alabama" is largely obstructed on the license plate, and the month and year of expiration of the tag are partially obstructed. *Id.* at 21-22. The obscuring bracket went around the whole license plate and partially obstructed "The Heart of Dixie," also, which is the seal for the State of Alabama, and "God Bless America," which was the particular vanity plate issued to that vehicle. *Id.* at 22.

22

Before the day of the suppression hearing, Wilson had not received the second page of Government's Exhibit 4, the signature page for the warrant and affidavit. *Id*. at 24. Wilson received a signed copy of the warrant and affidavit from the Lee County District Attorney's Office reflecting the correct date that the affidavit and warrant were signed by Wilson and Judge Hughes; the Government disclosed those to defense counsel before the suppression hearing. *Id*. at 24-26. The Government also played a DVD, Government Exhibit 3, containing the video from Wilson's dash camera from the stop on July 18, 2014. *Id*. at 26-28.

Wilson wrote McCullough a warning traffic ticket on July 18, 2014, at 1:27 a.m., for not having a plainly visible license plate pursuant to Alabama Code 32-6-51. *Id*. at 30-31. That ticket was admitted into evidence as Defendant's Exhibit 1. *Id*. at 31. Defendant's Exhibit 1-A was the other traffic ticket Wilson issued to McCullough for failing to yield to an emergency vehicle. *Id*. It was also dated July 18, 2014, at 1:27 a.m. *Id*.

The license plate reader in Wilson's vehicle was made by Vigilant Solutions. *Id*. at 33. The reader would start reading plates as soon as Wilson got into his vehicle and logged into the system; it would then continue to run reading plates, collecting alphanumeric combinations and taking photographs. *Id*. at 34. The reader only captured the alphanumeric combination on a license plate; it did not differentiate or disclose the state issuing the plate or the month and year of

23

expiration. *Id*. at 40. It then synthesized the information to see if it matched up with information in the NCIC servers. *Id*. If the tag number matched up with information in NCIC regarding such things as a stolen tag, an Amber alert, or a wanted person, Wilson received an alert on his computer. *Id*. at 40-41.

When Wilson's scanner first read the license tag of the truck McCullough was driving and it showed up on Wilson's screen, Wilson understood that the tag was an Alabama tag. *Id*. at 37, 38. He then radioed his headquarter and told them to run the tag as an Alabama tag and determined that the tag was valid, but the owner was deceased. *Id*. at 38-39. Wilson was told the month and year of the tag's expiration when he radioed the tag number in, but the reader did not reflect that information. *Id*. at 40.

Wilson admitted that the alphanumeric number on the tag on McCullough's truck was not obstructed and was plainly visible, and that the color on the tag was typical of an Alabama tag. *Id*. at 39-41.

The court then noted that it agreed that it could discern from the photograph of the plate that it was "most likely" an Alabama plate; that it could see "The Heart of Dixie," the tag number, the year, and the date it expired; and that it could "probably figure out that the A at the beginning and the A at the end refers to the state of Alabama," but was not sure that it made any difference. *Id*. at 42. The court stated that it could see what anybody could see and that was that the full

24

name of the state was partially obscured and that everything else on the plate was "slightly obscured except for the tag number." *Id*. at 44.

Finally, Wilson read an Alabama traffic regulation into evidence, Ala. Admin. Code r. 810-5-1 (2012), which provided that " 'Alabama' must … clearly be visible and must appear at the top of the license plate so that law enforcement can readily identify the state of issuance…  This will permit law enforcement to readily identify the state of issuance." *Id*. at 53-54.

## III.    STANDARDS OF REVIEW

*Issue I*:  A district court's denial of a motion to suppress evidence is reviewed *de novo*, because it presents a mixed question of law and fact.  *United States v. Gibson*, 708 F.3d 1256, 1274 (11th Cir. 2013).  The findings of fact are reviewed for clear error, and the application of the law to those facts is reviewed *de novo*.  *Id*.

In reviewing a motion to suppress evidence, the evidence is reviewed in the light most favorable to the prevailing party, in this case the Government, and the record is considered as a whole.  *United States v. Capers*, 708 F.3d 1286, 1295-96 (11th Cir. 2013).  "The standard for [this Court's] review of the magistrate's determination is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."  *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990) (internal quotation marks omitted), *citing Illinois v. Gates*,

25

462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332 (1983). "[T]he practical nature of the magistrate judge's decision justifies 'great deference' upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases." *Id., citing United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982).

Finally, the Court reviews "*de novo* the legal issue as to whether the *Leon* good faith exception to the exclusionary rule applies" to a search, reviewing underlying facts upon which the determination is based for clear error. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002).

*Issue II*: The Court reviews "the interpretation of rules of federal procedure" *de novo*." *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009). The decision of a successor judge that he may proceed under Rule 25(b) is reviewed for an abuse of discretion. *United States v. Harris*, 679 F.3d 1179, 1182 (9th Cir. 2012); *United States v. Casas*, 356 F.3d 104, 128 (1st Cir. 2004); *United States v. Hall*, 171 F.3d 1133, 1153 (8th Cir. 1999); *United States v Thomas*, 114 F.3d 228, 254 (D.C. Cir. 1997).

*Issue III*: An abuse-of-discretion standard of review also applies to appellate review of the reasonableness of sentencing decisions. *United States v. Irey*, 612.3d 1160, 1188 (11th Cir. 2010) (en banc), *citing Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2)

26

gives significant weight to an improper factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d at 1189 (internal quotation marks omitted), *citing United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc). "Under [this] deferential standard of review, [the Court is] to vacate the sentence if, but only if [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Osorio-Moreno*, No. 14-14447, slip op. at 9 (11th Cir. Mar. 1, 2016) (internal quotation marks omitted), *quoting United States v. Irey*, 612 F.3d at 1190, *in turn quoting United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008).

"To the extent that the district court has found facts, [the Court] accepts them unless they are clearly erroneous." *United States v. Irey*, 612 F.3d at 1190. The Court gives due deference to the district court's application of the Guidelines to the facts, which is equivalent to clear error review. *See United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010); *United States v. Rodriguez-Lopez,* 363 F.3d 1134, 1136-37 (11th Cir. 2004). This Court has previously stated that there is no clear error in cases where the record supports the district court's findings. *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

27

"The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the [18 U.S.C. ] § 3553(a) factors." *Id; accord, United States v. Saac*, 632 F.3d 1203, 1212 (11th Cir. 2012).

## SUMMARY OF THE ARGUMENT

Because McCullough was driving a truck with a partially obscured tag, Investigator Wilson had probable cause to stop McCullough for violating the Alabama traffic statute that required a license plate on a car be plainly visible. After stopping McCullough and as he approached McCullough's vehicle, Wilson smelled the odor of raw marijuana emanating from McCullough's truck. On that basis, Wilson had probable cause to arrest McCullough and search his truck. While searching McCullough's truck, Wilson found a large sum of money wrapped in rubber bands, a large bag with marijuana, and marijuana residue. Based on the evidence found during that search, Wilson had probable cause to search McCullough incident to his arrest. During the search of McCullough's person, Wilson found an additional $4,286 on McCullough's person and a room key to a Clarion Hotel room with the number 130 on it. Based on the marijuana, money, possession of the hotel key, and the fact that McCullough lived nearby but was staying in a hotel room, which in Wilson's experience were often used as stash houses, Wilson sought and obtained a search warrant for Room 130 at the Clarion Hotel. That search warrant, which was signed on the same day the search

28

occurred, was based on probable cause and, even if it was not, was based on Wilson's reasonable good faith reliance on the warrant.  For these reasons, the district court properly denied McCullough's motion to suppress.

Neither Judge Thompson nor Judge Dubina violated Federal Rule of Criminal Procedure 25(b).  There was no trial in this case; therefore, Rule 25(b) clearly does not apply.   Further, the guilty plea in this case was taken by a magistrate judge, who also adjudicated McCullough guilty of the offense.  That same magistrate judge presided at McCullough's suppression hearing and was the most familiar with the instant criminal case.  However, a magistrate judge is not authorized to sentence a criminal defendant and those duties were required to be performed by an Article III judge.  Judge Dubina is an Article III judge, and under any reading of Rule 25(b), the case could be reassigned to him for disposition.  He was also sufficiently familiar with the case and did not, therefore, abuse his discretion in not reassigning the case to Judge Thompson.

The sentence in this case was both procedurally and substantively reasonable and the court did not abuse its discretion in imposing a within-guideline sentence of 294 months in prison.  The court fully considered McCullough's rehabilitation arguments, but found McCullough's conduct did not call for a lesser sentence in light of McCullough's career offender status.

<u>**ARGUMENT**</u>

## I. THE DISTRICT COURT DID NOT ERR IN DENYING McCULLOUGH'S MOTION TO SUPPRESS.

In Issue 1of his brief, McCullough argues that the district court erred in dismissing his motion to suppress arguing: (1) there was no reasonable suspicion to support the initial traffic stop because the alphanumeric number on his tag was "plainly visible" and that is all that was required under Alabama law; (2) alternatively, that the Government cannot rely on the officer's mistake of law in this case because that mistake was objectively unreasonable in light of Alabama appellate court precedent interpreting the meaning of "plainly visible" under the traffic statute; (3) because law enforcement was not deprived of any information required by Alabama law to be displayed by McCullough on his truck, the traffic stop was unreasonable under the Fourth Amendment; and (4) the subsequent searches of his hotel room 130 at the Clarion Hotel was also unreasonable because it was the result of the initial illegal stop and arrest. This Court should reject each of these arguments for the reasons presented in the magistrate judge's and the district court's orders, and should affirm the denial of the suppression motion.

## A.   <u>Applicable Fourth Amendment Law</u>

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Holt*, 777 F.3d 1234, 1256 (11th Cir. 2015). "A traffic stop, which 'is a seizure within the meaning of the Fourth Amendment,' … 'is

30

constitutional if it is either based upon probable cause to believe a traffic violation

has occurred or justified by reasonable suspicion in accordance with *Terry [v.*

*Ohio]*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 [(1968)].' ''  *United States v.*

*Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009), *citing United States v. Purcell*, 236

F.3d 1274, 1277 (11th Cir. 2001), *and United States v. Harris*, 526 F.3d 1334,

1337 (11th Cir. 2008).

An officer has probable cause to stop a vehicle if he witnesses a traffic

violation.  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("[L]aw

enforcement may stop a vehicle when there is probable cause to believe that the

driver is violating any one of the multitude of applicable traffic and equipment

regulations relating to the operation of motor vehicles.") (internal quotation marks

omitted)); *accord, United States v. Spoerke*, 568 F. 3d at 1248.

Further, "[i]t is by now well established that a 'law enforcement officer may

conduct a brief investigative stop of a vehicle analogous to a *Terry*-stop, if the

seizure is justified by specific articulable facts sufficient to give rise to a

reasonable suspicion of criminal conduct.' ''  *United States v. Lopez-Garcia*, 565

F.3d 1306, 1313 (11th Cir. 2009), *citing United States v. Harris*, 928 F.2d 1113,

1116 (11th Cir. 1991) (internal quotation marks omitted).  Reasonable suspicion

may not be based on a hunch or guess that criminal activity is afoot.  *United States*

*v. Lopez-Garcia*, 565 F.3d at 1313.  Instead, an officer " 'must be able to point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' " *Id.*, *citing United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir 2005) (internal quotation marks omitted); *accord United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1997). The Court looks at the totality of the circumstances in evaluating whether the officer had the necessary reasonable suspicion. *Id.*

"During a lawful traffic stop, officers also may take steps that are reasonably necessary to protect their personal safety, … including requiring the driver and passengers to exit the vehicle 'as a matter of course.' " *United States v. Spoerke*, 568 F.3d at 1248, *citing United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001); *and quoting Maryland v. Wilson*, 519 U.S. 408, 410, 117 S. Ct. 882, 884 (1997); *and Pennsylvania v. Mimms*, 434 U.S. 106, 110-12, 98 S. Ct. 330, 333-34 (1977). They may also "prolong a traffic stop if [officers have] 'articulable suspicion of other illegal activity.' " *United States v. Holt*, 777 F.3d at 1256. In fact, "[o]nce an officer develops reasonable suspicion, he has a duty to investigate more." *Id.* This Court has found that an officer has probable cause to believe a crime has been committed at the point he smells marijuana. *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982); see also *United States v. Griffin*, 109 F.3d at 708 (strong odor of marijuana emanating from vehicle found to support reasonable suspicion for search); *United States v. Tobin*, 923 F.2d 1506, 1512

32

(11th Cir. 1991) ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").

Additionally, "under the automobile exception to the warrant requirement, officers can search any container in an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime." *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005).

An arrest is also subject to the Fourth Amendment's reasonableness requirement and it turns on the presence or absence of probable cause. *United States v. Lopez-Garcia*, 565 F.3d at 1314. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id*. (internal quotation marks and citation omitted).

Finally, "probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Sparks*, 806 F.3d 1323, 1337 (11th Cir. 2015) (internal quotation marks omitted), *citing United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  The probable cause determination an issuing judge must make is based on a practical and common sense evaluation of all of the circumstances contained in the affidavit before the

33

judge, including the affiant's basis of knowledge for and veracity of any hearsay information in the affidavit. *United States v. Sparks*, 806 F.3d at 1337. In reviewing the probable cause determination, this Court gives "due weight" "to inferences drawn from the facts by the issuing judge and local law-enforcement officers." *Id.*

**B.      Reasonable Suspicion And Probable Cause Existed For The Initial Traffic Stop.**

Investigator Wilson had both probable cause and reasonable suspicion to stop McCullough when McCullough drove by him in a truck with a license plate that was obstructed and not plainly visible; Wilson learned that the truck McCullough was driving was registered to a dead man; and McCullough failed to yield to Wilson's siren and lights for four miles. Specifically, Wilson had probable cause to believe that McCullough was violating Ala. Code § 32-6-51 (1975), which provides in relevant part as follows:

> Every motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license.

The tag attached to the truck McCullough was driving was largely obscured by a bracket with an eagle emblem on it that surrounded the tag and was not clearly visible. *See* Doc. 15-2. Although the alphanumeric number on the tag

34

could be seen plainly, much of the remainder of the tag was obscured, including the word "ALABAMA" at the top center of the tag; the month and date the tag expired at the top corners of the tag; the "Heart of Dixie" emblem in the left corner of the tag; and "God Bless America" at the bottom center of the tag. *Id*. McCullough does not dispute that these portions of the tag were not plainly visible (although he does argue that one can make out those portions of the tag), but argues instead that those features are unimportant and do not count for purposes of the statute, and only the alphanumeric number need be "plainly visible." He is wrong because that is not what the statute says. It does not say that only the alphanumeric numbers need to be plainly visible; it says the tag needs to be attached and plainly visible, not mentioning the number or any other features of the tag. Moreover, the other identifying marks on the tag – ALABAMA, Heart of Dixie, God Bless America, and the month and year of the tag's expiration – and their actual placement on the tag, are equally important in identifying the tag as one that was properly and legally issued by the State of Alabama.

Further, as Investigator Wilson testified at the suppression hearing, and as McCullough admits in his brief at page 16, an Alabama administrative regulation requires that "ALABAMA" "clearly be visible and appear at the top of the license plate so that law enforcement can readily identify the state of issuance." (Doc. 24-53-54) *See* Ala. Admin. Code r. 810-5-1-.217(4) (2012). Therefore, this

administrative regulation makes clear that ALABAMA needs to be plainly visible on a vehicle tag to comply with Alabama law and makes clear that the reason is so that law enforcement can readily identify the state of issuance.  Wilson had probable cause to stop McCullough under the Alabama traffic statute because McCullough's tag was not plainly visible.[4]

In support of his argument that only the alphanumeric number needs to be plainly visible to comply with Ala. Code § 32-6-51 (1975), McCullough relies on the wording of a completely different statute, Ala. Code § 40-12-242 (1975) (tag must be "attached right side up with the number thereof in an upright position and plainly visible"), and a case allegedly interpreting that statute, *Whistenant v. State*, 278 So.2d 183, 193 (Ala. Crim. App. 1973).  The statue on which McCullough relies is not a traffic statute or regulation with penalties for its violation, but is instead a revenue regulation designed to ensure that license and ad velorem taxes have been paid on personal vehicles.[5]  *See Whistenant v. State*, 276 So. 2d at 194

---

[4] Although not addressed in the court below, Wilson also had reasonable suspicion for stopping McCullough after he determined that the truck with the largely obscured tag was registered to a dead man and, when he activated his lights and siren, McCullough failed to yield for four miles, despite it being the middle of the night with light traffic. (Doc. 25-8, 33-36, 38-39, 52-50)  McCullough was written a traffic warning citation for failing to yield to an emergency vehicle.  *Id*. at 31.

[5] The statute does not even apply to all vehicles registered in Alabama, but only to "private passenger automobiles" and motorcycles.  Ala. Code § 40-12-242 (1975). In contrast, Ala. Code § 32-6-51 (1975) applies to "[e]very motor vehicle operator who operates a motor vehicle upon any city street or other public highway of this state…."

("It is obvious that the above sections of Title 51 are revenue measures and nothing more…."). Wilson did not stop McCullough for violating this revenue statute, but instead for violating a traffic statute requiring the tag to be plainly visible. All that the revenue statute proves is that, if it had wanted to, the Alabama Legislature could have required only that the alphanumeric numbers be plainly visible and that it knew how to say that if it wanted to. It did not use the language of that separate statute and that statute has no application to this case.

Moreover, because *Whistenant* did not interpret the traffic statute at issue here, but merely recited a separate traffic statute with a separate purpose, and that employed different language, in addressing an evidentiary issue, it does not provide support for McCullough's position. It is undisputed that the truck McCullough was driving had a license plate on it that was not plainly visible; therefore, this Court should reject McCullough claim that there was no probable cause for the traffic stop in his case.

**C.** **If Investigator Wilson Mistook The Law, That Mistake Was Reasonable.**

Even assuming that McCullough is right and that only the alphanumeric numbers on a license plate in Alabama need by plainly visible under Ala. Code § 32-6-51 (1975), he would not be entitled to relief because Investigator Wilson's mistake was one of law that is reasonable. In *Heien v. North Carolina*, 135 S. Ct. 530 (2014), the Supreme Court held that searches and seizures based on mistakes

of law, like those made on mistakes of fact, can be reasonable under the Fourth Amendment. *Id*. at 536-37. In reaching this conclusion, the Court noted that "reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion," than are mistakes of fact. *Id*. at 536. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' " *Id*. (internal citation omitted).

In *Heien*, the Court found the officer's mistake of law in interpreting a traffic statute reasonable because the language of the statute was ambiguous and there had never been a previous decision by the state appellate courts construing the provision. *Id*. at 540. To the extent that McCullough urges this Court to read a limitation into § 32-6-51 that it does not contain – that only the alphanumeric number be plainly visible – he is urging this Court to read ambiguity into the statute. Furthermore, although he alleges that, in *Whistenant*, an Alabama appellate court construed § 32-6-51, he is simply wrong. The court in *Whistenant* was not asked to construe the term "plainly visible" in any statute at all, not even the one before it, which was § 40-12-242, and therefore it did not. It merely recited the revenue statute, not § 32-6-51, in addressing another issue: whether a district court erred in admitting a tag receipt in evidence in a criminal trial for

receiving stolen property.  *See Whistenant*, 278 So.2d at 184, 193-94.

Investigator Wilson reasonably construed Ala. Code § 32-6-51 (1975) to require a license plate be plainly visible, not only that its alphanumeric number be plainly visible.  Therefore, if he was mistaken, the mistake was one that this Court should find was reasonable.[6]

### D.    The Stop Was Not Otherwise Unreasonable.

McCullough next argues that the traffic stop was simply unreasonable because "Wilson was not deprived of any information required by Alabama law to be displayed by McCullough on his truck."  McCullough brief at 19.  But Wilson believed that a traffic violation occurred in his presence; therefore he had not just reasonable suspicion, but probable cause to stop McCullough and issue him a traffic citation.  His actions were, therefore, wholly reasonable, regardless of whether Wilson could discern from his license plate reader the number on the tag and that reader, when connected to NCIC, reflected who owned that vehicle.

---

[6] In *United States v. Flores*, 798 F.3d 645 (7th Cir. 2015), the Seventh Circuit addressed a statute similar to Ala. Code § 32-6-51 (1975), which also required a license plate to be "clearly visible," and held that that statute allowed some obscuring of a license plate caused by aftermarket brackets, like the one used in this case.  It also found that the officer's mistake of law in interpreting the state traffic statute to the contrary was not reasonable under *Heien*, and it suppressed the evidence seized after the stop.  That case is distinguishable though because the Illinois appellate courts previously had interpreted the Illinois statute in such a way as to give notice to Illinois law enforcement notice that its statute permitted some obfuscation of the plate.  798 F.3d at 649-50.  This Court should also reject the conclusion in that case because it was based on the Illinois driving public's wide-use of plate frames instead of on the text of the statute itself.

Moreover, as Judge Thompson noted, a vehicle identification tag is not just for the use of police officers with license plate readers but they are also an important tool for the general public's use in identifying vehicles. (Doc. 28-2-3) McCullough discounts this finding in his brief, McCullough brief at 17, but provides no explanation why Judge Thompson's finding was erroneous. It is not. A license tag on a vehicle is an important tool for all citizens in reporting reckless or bad driving; suspected drunk driving; hit-and-run accidents; and myriad other crimes. It's also used by hotels to monitor and track customers, and apartment and gated communities to do the same in protecting its residents. Therefore, an obstructed tag should warrant a traffic stop whether the officer conducting the stop can discern the information on his license plate reader or not.

**E.   The Evidence Seized As A Result Of The Searches Was Not Tainted.**

Finally, McCullough argues that the searches of the truck and hotel room, and the seizures and statements given, were unreasonable because they were the result of the initial illegal traffic stop. McCullough brief at 20. As explained fully above, the initial traffic stop was based on probable cause, and all that came after it was also legal. After McCullough finally stopped his vehicle, Investigator Wilson had him get out of the car and he handcuffed McCullough for officer safety because he was conducting the stop alone initially and he wanted to check the vehicle to make sure there were no other passengers in it. (Doc. 25-9) This was

40

lawful police conduct. *See United States v. Spoerke*, 568 F.3d at 1248 ("During a lawful traffic stop, officers also may take steps that are reasonably necessary to protect their personal safety, … including requiring the driver and passenger to exit the vehicle 'as a matter of course.'").  On approaching the vehicle, Wilson smelled the strong odor of marijuana emanating from the open door of the car.  (Doc. 25-9)  The smell of marijuana provided the necessary probable cause to believe a crime had been committed and supported the arrest of McCullough.  *United States v. Lueck*, 678 F.2d at 903; *United States v. Tobin*, 923 F.2d at 1512 ("There is no doubt that the agent's suspicions rose to the level of probable cause when, as the door stood open, he detected what he knew from his law enforcement experience to be the odor of marijuana.").  Because McCullough was placed under arrest, he was properly searched incident to that arrest.  *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002) (Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification…. In fact, a full search incident to a lawful arrest is *not only* a "reasonable" search under the Fourth Amendment, it is *also* an exception to the warrant requirement.").

Next, because McCullough was in a movable vehicle, the automobile exception to the warrant requirement permitted Wilson to search the truck and any containers in it that could contain contraband because he had probable cause to

believe a crime had been committed. *United States v. Magluta*, 418 F.3d at 1182. The search of McCullough's truck and the search of his person revealed a gallon-size plastic bag with about a pound of a plant substance believed to be marijuana in it. (Doc. 25-10, 47, 48)  Also found was $8,335 in currency wrapped in rubber bands and some marijuana residue. *Id*. at 10, 47, 51-52.  The search of McCullough's person turned up an additional $4,286 and a room key for room 130 at a Clarion Hotel. *Id*. at 10-11, 47.

The evidence from the searches, along with some detective work by Wilson that revealed McCullough was staying at a Clarion Hotel in Auburn, Alabama, despite living nearby in Opelika, Alabama, led Wilson to seek a search warrant from a local state judge. *Id*. at 12-15.  That state judge found sufficient probable cause based on the affidavit presented by Wilson for the issuance of the search warrant for room 130 at the Auburn Clarion Hotel. *Id*. at 14-15, 23, 46.  Because there was probable cause for the warrant, and Wilson does not contend to the contrary in this appeal, the search of room 130 at the Clarion Hotel pursuant to that warrant was lawful. *United States v. Sparks*, 806 F.3d at 1337 ("[P]robable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").  Therefore, the evidence seized was lawfully seized and McCullough's arguments to the contrary are unavailing.

42

Finally, even if there had been a violation of the Fourth Amendment warrant requirement suppression of the evidence obtained from that violation was not required. *United States v. Smith*, 741 F.3d 1211, 1218-19 (11th Cir. 2013). "Instead, exclusion is a remedy of last resort, justified *only* where the deterrence benefits of suppression' outweigh the substantial social costs of ignor[ing] reliable trustworthy evidence bearing on guilt or innocence." *Id*. (internal quotation marks omitted), *citing Davis v. United States*, 131 S. Ct. 2419, 2427 (2011). In light of these principles, "courts generally should not render inadmissible evidence obtained by police officers in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Martin*, 297 F.3d at 1313, *citing United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). "The *Leon* good faith exception requires suppression 'only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.' " *Id., citing United States v. Leon*, 468 U.S. at 926, 104 S. Ct. at 3405. McCullough has not pointed to any dishonest or reckless conduct by Wilson in preparing the affidavit for the warrant or to any evidence that he could not have harbored an objectively reasonable belief in the existence of probable cause. Therefore, Wilson reasonably relied on the warrant in searching the hotel room.

All of McCullough's arguments on the denial of his suppression motion should be rejected.

## II.    McCULLOUGH'S MOTION PURSUAN TO FED. R. CRIM. P. 25(b) WAS PROPERLY DENIED BY THE SENTENCING JUDGE.

In Issue 2 of his brief, McCullough argues that Judge Thompson, the initial judge assigned to his case, violated Rule 25(b) when he reassigned McCullough's case to Judge Dubina for sentencing.  He also argues that Judge Dubina abused his discretion when he failed to reassign the case back to Judge Thompson.  In support of his argument, McCullough relies on Rule 25(b) of the Federal Rules of Criminal Procedure.  Rule 25, which is labeled "Judge's Disability," and addresses what happens if a trial judge becomes disabled during or after a trial, provides:

**(a)    During Trial.**  Any judge regularly sitting in or assigned to the court may complete a jury trial if:

(1)    the judge before whom the trial began cannot proceed because of death, sickness, or other disability; and

(2)    the judge completing the trial certifies familiarity with the trial record.

**(b)    After a Verdict or Finding of Guilty.**

**(1)    In General.**  After a verdict or finding of guilty, any judge regularly sitting in or assigned to a court, may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability.

**(2)    Granting a New Trial.**  The successor judge may grant a new trial if satisfied that:

44

(A)    a judge other than the one who presided at the trial cannot perform the post-trial duties; or

(B)    a new trial is necessary for some other reason.

There was no violation of Rule 25 by the initial reassignment of the case to Judge Dubina from Judge Thompson nor did Judge Dubina abuse his discretion in refusing to reassign the case back to Judge Thompson based on McCullough's motion.

## A.    <u>The Initial Reassignment Did Not Violate Rule 25(b)</u>.

The first reason that Rule 25 was not violated is because there was no trial in this case and Rule 25 addresses the reassignment of a case during or after trial due to the disability of the "judge who presided at trial."  Although McCullough argues, and one United States Court of Appeals, the Court of Appeals for the Eighth Circuit, has assumed, *see United States v. Urben-Potratz*, 470 F.3d 740, 744-45 (11th Cir. 2006), that the rule applies to the reassignment after a guilty plea as well as reassignment after trial, the text of the statute does not support that contention.  Rule 25, however, addresses only what is to happen if *the trial judge* becomes disabled for any reason.

In support of his contention that the statute applies to his case, a case in which he was found guilty as a result of his guilty plea instead of a trial, McCullough relies on the beginning phrase in Rule 25(b)(1), "[a]fter a verdict or

finding of guilty." McCullough argues that because he was found guilty pursuant to his guilty plea – a "finding of guilty" – the rule applies to his situation. But his contention makes no sense when the sentence is read as a whole because the rest of the sentence refers only to a situation when "the judge who presided at trial" cannot complete those duties, or sentencing, or post-sentencing duties.

A trial can result in a "verdict" or a "finding of guilty" depending on whether the trial is a jury trial or a bench trial. A "verdict" according to Black's Law Dictionary (10th ed. 2014) is defined as "*[a] jury's* finding or decision on the factual issues of a case." (Emphasis added.) After a bench trial, the trial judge makes a "finding" of guilty or not guilty. *See* Fed. R. Crim. P. 23(c) ("In a case tried without a jury, the court must find the defendant guilty or not guilty."). Therefore, the phrase "after a verdict or finding of guilty" could, and does, refer to a verdict or finding of guilty after either a jury or bench ***trial***, but not after the acceptance of a guilty plea. This interpretation of the rule makes the most sense, because it gives every word in the rule meaning so that no words are discarded as meaningless, and it makes the most sense when looking at the rule as a whole. *See United States v. Ballinger*, 395 F.3d 1218, 1236-37 (11th Cir. 2005) (en banc) (11th Cir. 2005) ("a cardinal principle of statutory construction that a statue ought, upon the whole to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (internal quotation marks and

citations omitted)); *United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003) ("when interpreting a statute, it is necessary to give meaning to all its words 'so that no words shall be discarded as being meaningless, redundant, or mere surplusage' "); *United States v. Silva*, 443 F.3d 795, 798 (11th Cir. 2006) (in reviewing the meaning of a statute, the court should look at the entire statutory context). To interpret the rule as McCullough would have this Court do would entirely read out of the rule that the disability be one of "the judge who presided at trial." McCullough asserts that a "finding of guilty" under the rule can be after a guilty plea or a trial, but he does not explain how the rest of the sentence works if that reading is accepted. The rest of the sentence requires that there be a disability of "the judge who presided at trial." McCullough's interpretation of the rule simply does not give meaning to all of the words in the rule, and it should, therefore, be rejected in favor of an interpretation that does. That interpretation being that a "finding of guilty" in the rule means a finding of guilty by a judge after a bench trial.

Furthermore, the Government only found one published case, the Eighth Circuit case identified above, in which Rule 25(b) was described as applying in the guilty plea context, and that case did not provide any analysis of the text of the rule. In the many other cases reviewed, including ones from this Court, Rule 25(b) was addressed in the context of a trial judge being replaced during or after trial.

*See, e.g., Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1210 (11th Cir. 2009); *United States v. Dowd*, 451 F.3d 1244, 1248 (11th Cir. 2006); *United States v. Caraza*, 843 F.2d 432, 435 (11th Cir. 1988); *United States v. McGuinness*, 769 F.2d 695, 696 (11th Cir. 1985) (*per curiam*); *United States v. Harris*, 679 F.3d 1179, 1181 (9th Cir. 2012); *In re United States*, 614 F.3d 661 (7th Cir. 2010); *United States v. Winkle*, 477 F.3d 407, 419 (6th Cir. 2007); *United States v. Casas*, 425 F.3d 23, 56 (1st Cir. 2005); *United States v. Colón-Muñoz*, 318 F.3d 348, 354-46 (1st Cir. 2003); *United States v. Hall*, 171 F.3d 1133, 1152-53 (8th Cir. 1999); *United States v. Thomas*, 114 F.3d 228, 254 (D.C. Cir. 1997); *United States v. Soto*, 48 F.3d 1415, 1418 (7th Cir. 1995); *United States v. Bourgeois*, 950 F.2d 980, 987-88 (5th Cir. 1992); *Virgin Islands v. Leonard*, 922 F.2d 1141, 1145 (3d Cir. 1991); *United States v. Whitfield*, 874 F.2d 591, 592-93 (8th Cir. 1989).

Finally, even assuming that McCullough is correct in his reading of the opening clause of the rule, Judge Thompson did not accept his guilty plea and make a finding that he was guilty; Magistrate Judge Coody took McCullough's guilty plea and adjudicated him guilty. Although Judge Thompson was the assigned judge at that time, he did not participate in the finding of guilty. He also did not preside at McCullough's suppression hearing, although he did review that record and make an independent finding that the motion to suppress should be denied. He also had no more information about McCullough's background than

48

did Judge Dubina at the time of sentencing.  Therefore, it makes little sense to assume that Judge Thompson's continued presence on McCullough's case was necessary to ensure fairness in his proceedings.  *See Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d at 1211 ("Given that '[a] sentencing judge enjoys broad discretion to determine whether he can perform sentencing duties in a case he did not try," there does not seem to be a federal constitutional principle at issue here."), *quoting United States v. McGuinness*, 769 F.3d at 696.

Furthermore, even if Judge Thompson was more familiar with McCullough's case, that does not mean that the case could not be reassigned for sentencing absent some disability on Judge Thompson's part.  Judge Thompson was not "the judge who presided at trial," and his disability *vel non* under the rule, even given McCullough's interpretation of the opening clause, is not relevant. McCullough has pointed to no statue or rule that requires a judge to sit on a case from beginning to end absent some demonstrated disability on his part or to any rule that states a case cannot be reassigned after the taking of a guilty plea absent a disability of the initially assigned judge.  And, in light of the broad discretion that district courts have in assigning court business to individual judges under 28 U.S.C. § 137, district judges may by rule, order, or consent transfer cases between themselves in order to ensure the expeditious administration of justice.  *See* 28 U.S.C. § 137 ("The business of a court having more than one judge shall be

49

divided among the judges as provided by the rules and orders of the court.");

*United States v. Martinez*, 686 F.2d at 334 ("District judges may by rule, order or

consent transfer cases between themselves…. Each judge or multi-district court

has the same power and authority as each other judge…. Moreover, the District

Judges have the inherent power to transfer cases from one to another for the

expeditious administration of justice."); *accord United States v. Diaz*, 189 F.3d at

1243-44. Judge Thompson, therefore, even absent any disability on his part, was

authorized to reassign McCullough's case to Judge Dubina, because there was no

trial judge in this case and Rule 25(b) did not limit his ability to do so.[7]

The initial reassignment of McCullough's case to Judge Dubina did not

violate Rule 25(b).

**B.    Judge Dubina Was Sufficiently Familiar With The Record To Sentence McCullough.**

McCullough also argues that Judge Dubina should have reassigned his case

back to Judge Thompson because Judge Dubina was not sufficiently familiar with

the record in this case to sentence him. This Court has interpreted Rule 25(b) to

require that the judge to whom a case is reassigned after the trial judge becomes

disabled to be sufficiently familiar with the record to sentence the defendant. *See*

---

[7] McCullough argues at page 22 of his brief that an overloaded docket is not a disability under Rule 25. Other courts have found to the contrary. *See, e.g., Virgin Islands v. Leonard*, 922 F.2d at 1145; *United States v. Colón-Muñoz*, 318 F.3d at 351-52.

*United States v. Dowd*, 451 F.3d at 1256; *United States v. McGuinness*, 769 F.2d at 696.  McCullough argues that Judge Dubina was not and that the case should, therefore, have been reassigned back to Judge Thompson, who was. McCullough's argument is refuted by the record.

McCullough argues that Judge Dubina demonstrated that he was not familiar with the record because he did not know about McCullough's motion to reassign the case back to Judge Thompson; he did not know that Judge Coody had taken the guilty plea; he did not read all of the letters presented by McCullough for sentencing purposes; and because Judge Dubina was not familiar with *United States v. Pepper*, 562 U.S. 476, 131 S. Ct. 1229 (2001), and did not know he could consider post-arrest rehabilitation in sentencing him.  He also argues that it can be inferred that Judge Dubina had not read the revocation hearing transcript, although he does not point to anything in the record from which such an inference can be drawn.

Taking each argument in turn, first, McCullough does not explain how Judge Dubina's unfamiliarity with his motion to reassign had an impact on his ability to sentence McCullough based on the relevant facts.  Without such a demonstration, he cannot demonstrate that Judge Dubina was unfamiliar with the case such that it needed to be reassigned to Judge Thompson for sentencing.

Second, Judge Dubina did not, as McCullough implies in his brief, assert that he did not know that McCullough had already pleaded guilty at the time of sentencing. Instead, all Judge Dubina expressed surprise at was the fact that a magistrate judge took McCullough's guilty plea, not an Article III judge. (Doc. 52-6) He in no way indicated that he was not familiar with McCullough's guilty plea or that McCullough had in fact entered a guilty plea.

Third, Judge Dubina did read all of the letters submitted by McCullough for sentencing purposes, along with all of the other evidence McCullough presented, and he stated on the record that he considered "all of these letters" and "everything that's been submitted to me… "every single thing that's been given to me." *Id*. at 10-11, 17, 26. McCullough's contrary arguments simply cannot hold water in light of the sentencing transcript.

Fourth, the fact that Judge Dubina had not read *United States v. Pepper*, 562 U.S. 476, 131 S. Ct. 1229 (2001), before sentencing McCullough does not demonstrate that he was unfamiliar with the factual record in this case. Moreover, when McCullough brought the case to Judge Dubina's attention and explained it to him, Judge Dubina told McCullough he knew he could consider the pre-indictment/post-indictment/post-guilty plea rehabilitation conduct in sentencing McCullough, but did not believe he was required to do so. *Id*. at 14. Judge Dubina's interpretation of *Pepper* was correct, and McCullough has not

demonstrated that his case needed to be reassigned to Judge Thompson for sentencing because of Jude Dubina's alleged unfamiliarity with *Pepper*.

Finally, McCullough argues that Judge Dubina should have reassigned his case to Judge Thompson because his case was complex. McCullough's case was anything but factually complex. It was a single witness traffic stop case that resulted in the filing of drug and firearm charges. There was no lengthy trial, no complex charges, no complex legal issues, and multiple defendants were not involved. The facts of the offense were straightforward, and McCullough's explanations for having drugs and firearms on his person were straightforward and not complex. Finally, Judge Dubina was fully capable of evaluating the mitigating evidence presented by McCullough.

McCullough has not demonstrated that Judge Dubina was not familiar enough with his case to sentence him. Therefore, even if Rule 25(b) had any applicability in the guilty plea context, Judge Dubina did not abuse his discretion in refusing to reassign the case back to Judge Thompson for sentencing.

## III.  <u>McCULLOUGH'S WITHIN-THE-GUIDELINES SENTENCE WAS BOTH PROCEDURALLY AND SUBSTANTIVELY REASONABLE.</u>

In Issue 3 of his brief, McCullough argues his sentence was both procedurally and substantively unreasonable, but it was not.

Reasonableness review entails a two-step process. *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010); *accord, United States v. Saac*, 632 F.3d 1203,

1212 (11th Cir. 2011).  The Court looks "first at whether the district court

committed any significant procedural error and then at whether the sentence is

substantively reasonable under the totality of the circumstances." *United States v.*

*Turner*, 626 F.3d at 573.  "A sentence may be procedurally unreasonable if the

district court improperly calculates the Guidelines range, treats the Guidelines as

mandatory rather than advisory, fails to consider the appropriate statutory factors,

selects a sentence based on clearly erroneous facts, or fails to adequately explain

the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir.

2008) (*per curiam*).

　　In determining whether a sentence is substantively reasonable, this Court

looks to the totality of the circumstances to determine whether the district court

abused its discretion in arriving at the sentence that it did.  *United States v. Irey*,

612 F.3d 1160, 1186 (11th Cir. 2010) (en banc); *United States v. Alvarado*, 808

F.3d 474, 496 (11th Cir. 2015).  "A district court abuses its discretion when it (1)

fails to afford consideration to relevant factors that were due significant weight, (2)

gives significant weight to an improper factor, or (3) commits a clear error of

judgment in considering the proper factors."  *United States v. Irey*, 612 F.3d at

1189 (internal quotation marks omitted), *citing United States v. Campa*, 459 F.3d

1121, 1174 (11th Cir. 2006) (en banc); *accord United States v. Rosales-Bruno*, 789

F.3d 1249, 1256 (11th Cir. 2015).  The abuse of discretion standards "allows a

range of choice for the district court, so long as that choice does not constitute a clear error in judgment." *United States v. Irey*, 612 F.3d at 1189 (internal citation and quotation marks omitted).

"To arrive at an appropriate sentence, the district court must consider all of the applicable § 3553(a) factors." *United States v Rosales-Bruno*, 789 F.3d at 1254. However, "[t]he weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Johnson*, 803 F.3d 610, 618 (11th Cir. 2015). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d at 1256; *see also United States v. Alvarado*, 808 F.3d at 496, *citing United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010); *accord United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010)*; United States v. Saac*, 632 F.3d at 1212. This Court has stated that it "ordinarily expect[s] a sentence within the Guidelines range to be reasonable…." *United States v. Gonzalez*, 550 F.3d at 1324.

McCullough has failed to demonstrate that Judge Dubina committed any procedural error in sentencing McCullough. Despite McCullough's assertion in his brief, the record demonstrates that Judge Dubina understood the holding of *United States v. Pepper*, 562 U.S. 476, 131 S. Ct. 1229 (2011), and knew that he could

consider McCullough's rehabilitation evidence in sentencing McCullough, but he

found that the evidence of rehabilitation was insufficient to override McCullough's

status as a career offender.  (Doc. 52-14, 26)  In light of the fact that McCullough

had myriad opportunities to turn his life around before being arrested on the

charges that led to his revocation of supervised release on his prior federal charges,

but did not, it was not unreasonable for Judge Dubina to discount those

rehabilitation efforts.  Leopard's often change their spots when looking at lengthy

prison sentences, but not often before.  McCullough did not change until he was

looking at a long time in prison.  Therefore, his demonstrated limited rehabilitation

that occurred while he was at an inpatient facility while awaiting trial was not

worth all that much, and Judge Dubina did not abuse his discretion in discounting

it.

McCullough's 294-month within-guidelines sentence was also substantively

reasonable based on his lifetime of drug dealing and committing other criminal

offense.  Although McCullough believes that his sentence should have been less

because this crime and his previous crimes involved marijuana and not more

dangerous and addictive illegal drugs like crack cocaine, heroin, and

methamphetamine, the fact that his drug of choice is less dangerous does not

excuse his repeated failure to obey the criminal laws.  McCullough was given

break after break after break and not once did he rehabilitate himself and stop

committing drug offenses and stop carrying a gun in connection with those offenses, at least not until he was facing career offender status in federal court. Sentencing him to a lengthy prison sentence was the only way to ensure his compliance with the law, and Judge Dubina did not abuse his discretion in concluding that was the case.

McCullough has not demonstrated that his sentence was either procedurally or substantively unreasonable. Therefore, his sentence should be affirmed.

## CONCLUSION

For the above reasons, this Court should affirm McCullough's convictions and sentence.

Respectfully submitted,

GEORGE L. BECK, JR.
UNITED STATES ATTORNEY

s/ Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney

57

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief does not comply with the type-volume limitations set forth in Fed.

R. App. P. 32(a)(7)(B).  Instead, it contains 13,922 words.


/s/  Sandra J. Stewart
SANDRA J. STEWART
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2016, a true and accurate copy of the foregoing brief was served on counsel for the Defendant/Appellant by placing copies of the same to him in the United States mail, first class postage prepaid, to the following address:

> Paul R. Cooper
> COOPER & COOPER
> 312 Scott Street
> Montgomery, AL  36104

and that seven copies of the brief were sent by Federal Express to the Clerk of this Court, on the same date, to the following address:

> Clerk's Office - Appeal No. 15-15430-BB
> U.S. Court of Appeals - Eleventh Circuit
> 56 Forsyth Street NW
> Atlanta, GA  30303

A copy of the brief was electronically filed this same date.

> /s/  Sandra J. Stewart
> SANDRA J. STEWART
> Assistant United States Attorney

**Address of Counsel:**
United States Attorney's Office
131 Clayton Street
Montgomery, AL  36104
(334) 223-7280
sandra.stewart@usdoj.gov

59